Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
02/23/2023
CT Log Number 543285720

## Service of Process Transmittal Summary

**TO:**   X.L. Global Legal
X.L. America, Inc.
505 EAGLEVIEW BLVD STE 100
EXTON, PA 19341-1199

**RE:**   **Process Served in Maryland**

**FOR:**   Indian Harbor Insurance Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SOUTHLAND INDUSTRIES vs. INDIAN HARBOR INSURANCE COMPANY |
| **DOCUMENT(S) SERVED:** | Writ(s) of Summons, Complaint, Exhibit(s), Notice(s), Attachment(s), Request |
| **COURT/AGENCY:** | Baltimore City Circuit Court, MD<br>Case # 24C23000990CN |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | The Corporation Trust Incorporated, Lutherville Timonium, MD |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/23/2023 at 15:16 |
| **JURISDICTION SERVED:** | Maryland |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S)/SENDER(S):** | Laura A. Freid-Studlo<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>1200 Seventeenth Street, NW<br>Washington, DC 20036<br>202-663-9391 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/23/2023, Expected Purge Date: 02/28/2023<br><br>Image SOP<br><br>Email Notification,  X.L. Global Legal  us_legal_service_of_process@axaxl.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Incorporated<br>2405 York Rd<br>Ste 201<br>Lutherville Timonium, MD 21093<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the



**CT Corporation**
**Service of Process Notification**
02/23/2023
CT Log Number 543285720

included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                              Thu, Feb 23, 2023
**Server Name:**                       Drop Service

| Entity Served | INDIAN HARBOR INSURANCE COMPANY |
|---|---|
| Case Number | 24C23000990 |
| Jurisdiction | MD |

| Inserts | | |
|---|---|---|
| | | |



CIRCUIT COURT FOR BALTIMORE CITY
Xavier A. Conaway
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722, TTY for Deaf: (410)-333-4389


W R I T   O F   S U M M O N S   (P r i v a t e   P r o c e s s)
Case Number: 24-C-23-000990 CN
C I V I L
Southland Industries vs Indian Harbor Insurance Company, et al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

     To: INDIAN HARBOR INSURANCE COMPANY
Serve On: Registered Agent
          The Corporation Trust, Incorporated
          2405 York Rd., Suite 201
          Lutherville Timonium, MD 21093


     You are hereby summoned to file a written response by pleading or motion, within 30   days after service of this summons upon you, in this court, to the attached Complaint filed by:   Southland Industries
                                                  12131 Western Ave.
                                                  Garden Grove, CA 92841

WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of Maryland


Date Issued:  02/13/23          Xavier A. Conaway
                                Clerk of the Circuit Court, per


To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.

CIRCUIT COURT FOR BALTIMORE CITY
Xavier A. Conaway
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722, TTY for Deaf: (410)-333-4389


W R I T   O F   S U M M O N S   ( P r i v a t e   P r o c e s s )
Case Number: 24-C-23-000990 CN
C I V I L
Southland Industries vs Indian Harbor Insurance Company, et al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

      To: INDIAN HARBOR INSURANCE COMPANY
Serve On: Registered Agent
          The Corporation Trust, Incorporated
          2405 York Rd., Suite 201
          Lutherville Timonium, MD 21093


      You are hereby summoned to file a written response by pleading or motion,
within 30   days after service of this summons upon you, in this court, to
the attached Complaint filed by:   Southland Industries
                                   12131 Western Ave.
                                   Garden Grove, CA 92841

WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of
Maryland


Date Issued:  02/13/23
                              Xavier A. Conaway
                              Clerk of the Circuit Court, per


To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT
BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

SOUTHLAND INDUSTRIES               )
12131 Western Avenue               )
Garden Grove, CA 92841             )
                                   ).
        Plaintiff,                 )
                                   )
vs.                                )
                                   )
INDIAN HARBOR INSURANCE            )    Civil Action No. _____
COMPANY                            )
70 Seaview Avenue, Suite 1         )
Stamford, CT 06902                 )
                                   )    JURY TRIAL DEMANDED
Serve on Registered Agent:         )
      The Corporation Trust, Incorporated )
      2405 York Road, Suite 201    )
      Lutherville Timonium, MD 21093 )
                                   )
and                                )
                                   )
OLD REPUBLIC INSURANCE             )
COMPANY                            )
631 Excel Drive, Suite 200         )
Mt. Pleasant, PA 15666             )
                                   )
Serve on:                          )
      Maryland Insurance Administration )
      200 St. Paul Place, Suite 2700 )
      Baltimore, MD  21202         )
                                   )
and                                )
                                   )
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH,             )
PENNSYLVANIA                       )
1271 Avenue of the Americas, Floor 37 )
New York, NY 10020                 )
                                   )

```
                                    )
Serve on:                           )
    Maryland Insurance Administration   )
    200 St. Paul Place, Suite 2700   )
    Baltimore, MD  21202             )
                                    )
    Defendants.                      )
                                    )
```

## COMPLAINT

Plaintiff Southland Industries ("Plaintiff" or "Southland"), for its Complaint against Defendants Indian Harbor Insurance Company ("Indian Harbor"), Old Republic Insurance Company ("Old Republic"), and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") alleges as follows:

## INTRODUCTION

1.      This is an action for Breach of Contract and Declaratory Relief.  This lawsuit arises out of: (a) Indian Harbor's refusal to provide insurance coverage under a professional liability policy it issued to Southland for a professional liability claim being made against Southland allegedly arising out of negligent design related to work at a construction project in Baltimore; and (b) Old Republic and National Union's refusal to provide indemnity under their commercial general liability policies issued to Southland for damages (including settlements) arising out of property damage allegedly caused by Southland's negligent installation work at the project.

2.     Southland seeks to have this Court construe the meaning of, and enforce the provisions of, the applicable insurance policies.

## PARTIES AND JURISDICTION

3.     Southland is a California corporation with its principal place of business in California.  It is licensed to and has performed work in Maryland, including with respect to the construction project referenced herein.

4.     Upon information and belief, Indian Harbor is a Delaware corporation with its principal place of business in Connecticut and is licensed to and does carry on substantial business in Maryland.

5.     Upon information and belief, Old Republic is a Pennsylvania corporation with its principal place of business in Pennsylvania and is licensed to and does carry on substantial business in Maryland.

6.     Upon information and belief, National Union is a Pennsylvania corporation with its principal place of business in New York and is licensed to and does carry on substantial business in Maryland.

7.     In consideration of substantial premiums paid, Indian Harbor, Old Republic, and National Union sold the insurance policies at issue to Southland and agreed to insure claims according to the policy terms, including claims arising out of the Hilton Baltimore Hotel construction project ("Hilton") or ("Project").

8.     This Court has personal jurisdiction over Indian Harbor, Old Republic, and National Union pursuant to Md. Code, Cts. & Jud. Proc. § 6-103

because they transact business within this State and contracted to insure losses arising out of the Project within this State.

9.     This Court has subject matter jurisdiction over this case under Md. Code, Cts. & Jud. Proc. §§ 1-501 and 4-401(1) because Indian Harbor, Old Republic, and National Union contracted to insure losses arising out of the Project within this State and the amount in controversy is greater than $30,000.

10.    This Court has subject matter jurisdiction pursuant to Md. Code, Cts. & Jud. Proc. § 3-403 as Southland seeks a declaratory judgment in this action.

11.    Venue is proper in this Court under Md. Code, Cts. & Jud. Proc. § 6201 because Indian Harbor, Old Republic, and National Union, on their own and through their agents, carries on regular business in Baltimore City, the claim for which Southland seeks insurance coverage arose in Baltimore City, and the litigation resulting in Southland's liabilities is pending in Baltimore City.

## **FACTUAL BACKGROUND**

**The Project and Lawsuit**

12.    Plaintiff Southland is a mechanical, electrical, and plumbing engineering and construction contractor.

13.    On or about March 10, 2006, Southland entered into a contract (the "Hensel Phelps Contract") with general contractor Hensel Phelps Construction Company ("Hensel Phelps") for the design and installation of a plumbing system for the Hilton Baltimore Convention Center Hotel located in Baltimore, Maryland

(the "Hilton" or "Project").  The Hilton is owned by Baltimore Hotel Corporation ("BHC").

14.     The Hensel Phelps Contract required, among other things, Southland to design the plumbing system and, upon approval of the designs after submission to BHC and Hensel Phelps, to install the system at the Project.

15.     On or about December 18, 2018, BHC filed a lawsuit against Southland and Hensel Phelps in this Court (the "Lawsuit").  Southland was served with the Lawsuit on or about December 27, 2018.

16.     In the Lawsuit, BHC alleged that Southland negligently designed, supervised, managed, and reviewed the implementation of the design for the plumbing system.  Further, BHC alleged that Southland negligently installed the system by using galvanized steel piping instead of copper piping, thereby causing the Hilton to suffer physical damage to fixtures, appurtenances, and the building itself as well as damage to the entirety of the domestic water system which could result in catastrophic structural failures and needed to be replaced.

17.     BHC further alleged that it experienced loss of use and revenue damage related to the Hilton.

18.     In the Lawsuit, BHC seeks from Southland and Hensel Phelps more than $15,000,000 in physical damage and lost revenue that it claims result from Southland's allegedly negligent design, supervision, management, review, and installation activities, as well as attorneys' fees and costs to the extent ordered by

the Court.  Southland and BHC have reached a confidential tentative settlement in an amount that triggers the limits of the Indian Harbor, Old Republic, and AIG policies.

19.     On or about September 30, 2020, BHC filed an Amended Complaint in the Lawsuit.

**Facts Related to the Professional Liability Policies**

20.     From at least December 18, 2017 until December 18, 2021, Indian Harbor sold a series of insurance policies to Southland, each styled as a "PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made) Policy" (the "Indian Harbor Policies").  The Indian Harbor Policies required Indian Harbor to provide coverage for various claims made against Southland.

21.     Among the Policies sold to Southland by Indian Harbor is Policy No. CEO744654902, with an effective policy period of December 18, 2018 through December 18, 2019 (the "2018-2019 Indian Harbor Policy").  A true and correct copy of this policy is attached hereto as **Exhibit 1**.

22.     On February 25, 2021, Southland presented Indian Harbor with a professional liability claim arising out of alleged professional liability deficiencies related to the Project as alleged in the Lawsuit (the "Professional Liability Claim") and demanded defense and indemnity.

23.     On May 26, 2021, Indian Harbor denied coverage under the wrong policy without addressing in any way coverage under the 2018-2019 Indian Harbor

Policy. AXA Insurance Services, on behalf of Indian Harbor, issued a letter to Southland denying coverage for the Professional Liability Claim under the 2019-2020 policy period. The only stated bases for denial of the Claim were that the BHC claim preceded the policy period and that: "Southland Industries did not report this claim to us until February 2021. Since the claim was not made and reported during the 'Policy Period' there is no coverage for this matter under Coverage A."

24.     The Professional Liability Claim falls within the coverage provided by the 2018-2019 Indian Harbor Policy. Southland has satisfied all conditions and obligations, including payment of premiums, under the 2018-2019 Indian Harbor Policy.

**Facts Related to the General Liability Policies**

25.     From at least April 1, 2007 through April 1, 2019, Old Republic issued a series of General Liability insurance policies to Southland (the "Old Republic Policies") providing indemnity for specified damages that Southland becomes legally obligated to pay due to property damage or bodily injury.

26.     From at least April 1, 2007 through April 1, 2019, National Union issued a series of Umbrella Prime and Excess Liability policies to Southland (the "National Union Policies").

27.     The National Union Policies provide first and second layer excess coverage above that afforded by the Old Republic Policies pursuant to the terms of those policies.

28.     Southland provided the Lawsuit to Old Republic and National Union and demanded defense and indemnity.

29.     According to the Lawsuit, property damage took place during at least the period April 1, 2015 through April 1, 2018.

30.     On or about August 20, 2019, Old Republic issued a reservation of rights letter and has since been providing Southland with a defense to the Lawsuit subject to that reservation of rights.  Upon information and belief, Old Republic has offered to pay only $650,000 in indemnity with respect to the damages alleged in the Lawsuit.

31.     Despite damages alleged in excess of the Old Republic policy limits for the years potentially implicated, National Union has failed to provided indemnity for any of the damages alleged in the Lawsuit.

32.     In failing to acknowledge coverage under their respective policies, Indian Harbor, Old Republic, and National Union have breached their valid and enforceable contracts with Southland.  As a result, actual controversies exist between the parties for which a declaratory judgment setting forth their respective rights and obligations under the insurance policies at issue is necessary.

33.     The inappropriate conduct of Indian Harbor, Old Republic, and National Union has caused Southland to suffer damages, including those related to Southland being forced to retain outside counsel and, ultimately, bring the present litigation.

34.     All conditions precedent to bringing this action have been waived, excused, performed, or have otherwise occurred.

<u>**COUNT I – BREACH OF CONTRACT**</u>
**(Against Indian Harbor)**

35.     Southland hereby incorporates Paragraphs 1-24 and 32-34 as if fully set forth herein.

36.     The 2018-2019 Indian Harbor Policy is a written contract of insurance obligating Indian Harbor to provide coverage to Southland according to its terms, including Md. Code, Ins., § 19-110.

37.     Southland paid all premiums due under the 2018-2019 Indian Harbor Policy and has performed all other obligations due under the 2018-2019 Indian Harbor Policy.

38.     Indian Harbor had a duty under the 2018-2019 Indian Harbor Policy to defend, indemnify, and otherwise provide coverage to Southland for the Professional Liability Claim.

39.     Indian Harbor has not demonstrated any actual prejudice resulting from the timing of Southland's notice of the Professional Liability Claim, as required under Maryland statutory law.

40.     Indian Harbor breached its duties to Southland by improperly denying coverage for the Professional Liability Claim.

41.     Southland has suffered damages as a direct result of Indian Harbor's breaches in an amount in excess of the jurisdictional limit, which amount will be proven at trial.

**WHEREFORE**, Southland requests entry of judgment against the Indian Harbor for all damages proximately caused by Indian Harbor's breaches, together with costs and prejudgment interest, and any such other and further relief as this Court may deem just and proper.

### COUNT II – DECLARATORY JUDGMENT
**(Against Indian Harbor)**

42.     Southland hereby incorporates Paragraphs 1-24 and 32-34 as if fully set forth herein.

43.     Southland seeks a declaratory judgment under Md. Code, Cts. & Judicial Proc. § 3-406 as to its rights under the 2018-2019 Indian Harbor Policy.

44.     An actual and justiciable controversy exists related to the 2018-2019 Indian Harbor Policy and the obligation of Indian Harbor to pay for the Professional Liability Claim.

- 10 -

45.     Southland contends it is entitled to coverage for the Professional Liability Claim under the 2018-2019 Indian Harbor Policy. Indian Harbor contends that Southland is not entitled to coverage because Southland did not report the Professional Liability Claim during the appropriate policy period and/or that the Professional Liability Claim is barred by a policy exclusion.

46.     The issuance of a declaratory judgment by this Court is necessary to resolve the existing controversy between the parties.

47.     As such, this Court has the authority to issue a declaratory judgment concerning the respective rights and obligations of Southland and Indian Harbor under the 2018-2019 Indian Harbor Policy.

**WHEREFORE**, Southland requests entry of judgment against Indian Harbor, (i) declaring that Southland timely reported the Professional Liability Claim to Indian Harbor pursuant to the 2018-2019 Indian Harbor Policy and Md. Code, Ins. § 19-110 and that Indian Harbor suffered no prejudice from any delay; (ii) declaring that no exclusion applies to bar coverage for the Professional Liability Claim under the 2018-2019 Indian Harbor Policy, and (iii) awarding costs and pre-judgment interest, and such other relief as to this Court may seem just and proper.

## COUNT III – BREACH OF CONTRACT
### (Against Old Republic)

48.     Southland hereby incorporates Paragraphs 1-19 and 25-34 as if fully set forth herein.

49.    The Old Republic Policies are written contracts of insurance obligating Old Republic to provide coverage to Southland according to the policy terms.

50.    Southland paid all premiums due under the Old Republic Policies and has performed all other obligations due under the Old Republic Policies.

51.    Old Republic had a duty under the Old Republic Policies to defend Southland in the Lawsuit and indemnify Southland (up to applicable policy limits) for damages (including settlements) related to property damage resulting from Southland's alleged negligent installation work.

52.    Old Republic breached its duties to Southland by failing to provide full indemnification for the damages claimed against Southland in the Lawsuit.

53.    Southland has suffered damages as a direct result of Old Republic's breaches in an amount in excess of the jurisdictional limit, which amount will be proven at trial.

**WHEREFORE**, Southland requests entry of judgment against Old Republic for all damages proximately caused by Old Republic's breaches, together with costs and prejudgment interest, and any such other and further relief as this Court may deem just and proper.

## COUNT IV – DECLARATORY JUDGMENT
### (Against Old Republic)

54.    Southland hereby incorporates Paragraphs 1-19 and 25-34 as if fully set forth herein.

55.    Southland seeks a declaratory judgment under Md. Code, Cts. & Judicial Proc. § 3-406 as to its rights under the Old Republic Policies.

56.    An actual and justiciable controversy exists related to the Old Republic Policies and the obligation of Old Republic to provide full indemnification for the damages claimed against Southland in the Lawsuit.

57.    Southland contends it is entitled to indemnification from Old Republic for the damages (including settlements) related to property damage at the Project claimed against Southland in the Lawsuit, up to applicable policy limits. Old Republic contends that Southland is not entitled to full indemnity under its policies..

58.    The issuance of a declaratory judgment by this Court is necessary to resolve the existing controversy between the parties.

59.    As such, this Court has the authority to issue a declaratory judgment concerning the respective rights and obligations of Southland and Old Republic under the Old Republic Policies.

**WHEREFORE**, Southland requests entry of judgment against Old Republic, (i) declaring that no exclusion applies to bar coverage for the damages

claimed against Southland in the Lawsuit under the Old Republic Policies, and (ii) awarding costs and pre-judgment interest, and such other relief as to this Court may seem just and proper.

**COUNT V – BREACH OF CONTRACT**
**(Against National Union)**

60.    Southland hereby incorporates Paragraphs 1-19 and 25-34 as if fully set forth herein.

61.    The National Union Policies are written contracts of insurance obligating National Union to provide coverage to Southland according to the policy terms.

62.    Southland paid all premiums due under the National Union Policies and has performed all other obligations due under the National Union Policies.

63.    With respect to each of the National Union Policies, National Union had a duty to indemnify Southland (up to applicable policy limits) for damages (including settlements) related to property damage resulting from Southland's alleged negligent installation work upon in excess of the applicable underlying Old Republic Policy of the same policy term.

64.    National Union breached its duties to Southland by failing to provide indemnification for the damages claimed against Southland in the Lawsuit which exceed the applicable limit of liability in the Old Republic Policies.

65.     Southland has suffered damages as a direct result of National Union's breaches in an amount in excess of the jurisdictional limit, which amount will be proven at trial.

**WHEREFORE**, Southland requests entry of judgment against National Union for all damages proximately caused by National Union's breaches, together with costs and prejudgment interest, and any such other and further relief as this Court may deem just and proper.

<u>**COUNT VI – DECLARATORY JUDGMENT**</u>
**(Against National Union)**

66.     Southland hereby incorporates Paragraphs 1-19 and 25-34 as if fully set forth herein.

67.     Southland seeks a declaratory judgment under Md. Code, Cts. & Judicial Proc. § 3-406 as to its rights under the National Union Policies.

68.     An actual and justiciable controversy exists related to the National Union Policies and the obligation of National Union to provide indemnification for the damages claimed against Southland in the Lawsuit.

69.     Southland contends it is entitled to indemnification from National Union for damages (including settlements) related to property damage at the Project claimed against Southland in the Lawsuit in excess of any applicable Old Republic Policy.  Upon information and belief, National Union contends that Southland is not entitled to any indemnity coverage from National Union.

- 15 -

70.     The issuance of a declaratory judgment by this Court is necessary to resolve the existing controversy between the parties.

71.     As such, this Court has the authority to issue a declaratory judgment concerning the respective rights and obligations of Southland and National Union under the National Union Policies.

**WHEREFORE**, Southland requests entry of judgment against National Union, (i) declaring that National Union's indemnity obligation to Southland applies to damages and settlements in excess of any applicable Old Republic Policy for the same policy term, (ii) declaring that no exclusion applies to bar coverage for the damages claimed against Southland in the Lawsuit under the National Union Policies, and (ii) awarding costs and pre-judgment interest, and such other relief as to this Court may seem just and proper.

### DEMAND FOR JURY TRIAL

Southland demands a trial by jury for all issues so triable.

Laura A. Freid-Studlo (CPF# 0512140121)

- 16 -

## MARYLAND RULE 1-313 CERTIFICATION

I, Laura A. Freid-Studlo, hereby state that I am duly admitted to practice

law in the State of Maryland.

_____
Laura A. Freid-Studlo (CPF# 0512140121)

Dated:  February 10, 2023            Respectfully submitted,

_____
Laura A. Freid-Studlo (CPF# 0512140121)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, DC 20036
Phone: (202) 663-9391
Fax: (202) 663-8007
laura.freidstudlo@pillsburylaw.com

*Counsel for Plaintiff Southland Industries*

- 17 -

# **EXHIBIT 1**



XL Insurance

Policy

## NOTICE TO POLICYHOLDER

### CALIFORNIA

### SURPLUS LINES NOTICE:

1.   **THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

2.   **THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

3.   **THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

4.   **THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER 800-927-4357 OR INTERNET WEBSITE www.insurance.ca.gov. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT www.naic.org.**

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDER

5.     **FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

6.     **FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

7.     **CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: www.insurance.ca.gov.**

8.     **IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
|---|---|
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| Puerto Rico | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

© 2017 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

### PRIVACY POLICY

The XL Catlin insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the XL Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;

PN CW 02 1015

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

PN CW 02 1015

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

<u>Access to Your Information</u>

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

<u>Violation of the Privacy Policy</u>

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1].  Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

---

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

©2017 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NOTICE TO POLICYHOLDERS

### IMPORTANT INFORMATION TO POLICYHOLDERS - CALIFORNIA

In the event you need to contact someone about this Policy for any reason please contact your agent.  If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:

> **XL Catlin**
> **Seaview House**
> **70 Seaview Avenue**
> **Stamford, CT  06902-6040**
> **1-800-622-7311**

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

> **Department of Consumer Affairs**
> **Consumer Information Division**
> **1625 North Market Blvd., Suite N 112**
> **Sacramento, CA  95834**
>
> **Internet Website:  www.dca.ca.gov**
>
> **1-800-952-5210**
> **1-800-326-2297 (TDD Number)**
> **916-445-1254 (If calling from within the Sacramento area)**
> **916-928-1227 (TDD Number if calling from within the Sacramento area)**

Written correspondence is preferable so that a record of your inquiry can be maintained.  When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

## CONSTRUCTION
## PROFESSIONAL LIABILITY

1.      **Immediately notify the Company of a loss.**

2.      **Complete the Notice of Claim and e-mail a copy to:**

        **napropcasclaimnewnotices@xlcatlin.com.**

        **An alternative is to mail Notice to:**

        **XL Catlin**
        **c/o ACS, Inc.**
        **PO Box 614002**
        **Orlando, FL  32861-4002**

3.      **Spills or Releases involving Hazardous Materials or Petroleum Products require an immediate phone call to XL Claims at 800-432-2481. This toll-free number is manned 24-hours a day, 365 days a year.**

4.      **Questions should be directed to XL Catlin Claims at 800-823-7351 or by Fax to 610-458-6653.**

 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

## POLLUTION AND PROFESSIONAL LIABILITY POLICY CLAIMS - NOTICE OF CLAIM

E-mail To:  napropcasclaimnewnotices@xlcatlin.com

Or Mail To:  XL Catlin
c/o ACS, Inc.
PO Box 614002
Orlando, FL  32861-4002

Today's Date: _____     Date of Loss: _____

### INSURED

Company: _____
Contact: _____  Phone: _____
Address: _____
E-Mail Address: _____

### AGENCY OR BROKERAGE

Agency Name: _____
Contact: _____  Phone: _____
Address: _____
E-Mail Address: _____

### POLICY INFORMATION

Policy Number: _____  Policy Term: _____
Limits of Liability:  $ _____ (Occurrence)     $ _____ (Aggregate)
Date Notice of Loss Received: _____
Self-Insured Retention: _____

### LOSS INFORMATION

Claimant Name: _____
Claim Address: _____
Location of Loss: _____
Description of Loss: _____

**Person Filing Notice of Loss**: _____  Phone: _____

# NOTICE TO POLICYHOLDERS

### FRAUD WARNINGS

**NOTICE TO ALABAMA CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines or confinement in prison, or any combination thereof.

**NOTICE TO ALASKA CLAIMANTS:** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**NOTICE TO ARIZONA CLAIMANTS:** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**NOTICE TO ARKANSAS CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment for a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO CALIFORNIA CLAIMANTS:** For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**NOTICE TO COLORADO CLAIMANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**NOTICE TO DELAWARE CLAIMANTS:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO D.C. CLAIMANTS: WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the claimant.

**NOTICE TO FLORIDA CLAIMANTS:** Any person who knowingly and with intent to injure, defraud, or deceive any insurance company files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**NOTICE TO HAWAII CLAIMANTS:** For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment or both.

**NOTICE TO IDAHO CLAIMANTS:** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO INDIANA CLAIMANTS:** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**NOTICE TO KENTUCKY CLAIMANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**NOTICE TO LOUISIANA CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO MAINE CLAIMANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for purposes of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**NOTICE TO MARYLAND CLAIMANTS:** Any person who knowingly *or* willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly *or* willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO MINNESOTA CLAIMANTS:** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**NOTICE TO NEW HAMPSHIRE CLAIMANTS:** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud as provided in section 638:20.

**NOTICE TO NEW JERSEY CLAIMANTS:** Any person who knowingly files a statement of claim or an application for an insurance policy containing any false or misleading information is subject to criminal and civil penalties.

**NOTICE TO NEW MEXICO CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**NOTICE TO NEW YORK COMMERCIAL INSURANCE CLAIMANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime, and shall be also subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**NOTICE TO NEW YORK CLAIMANTS FOR AUTOMOBILE INSURANCE:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

**NOTICE TO NEW YORK CLAIMANTS FOR FIRE INSURANCE:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy.

 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**NOTICE TO OHIO CLAIMANTS:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**NOTICE TO OKLAHOMA CLAIMANTS: WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO PENNSYLVANIA CLAIMANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**NOTICE TO PENNSYLVANIA CLAIMANTS FOR AUTO INSURANCE:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000.

**NOTICE TO PUERTO RICO CLAIMANTS: WARNING:** Any person who knowingly and with the intention to defraud includes false information in an application for insurance or file, assist or abet in the filing of a fraudulent claim to obtain payment of a loss or other benefit, or files more than one claim for the same loss or damage, commits a felony and if found guilty shall be punished for each violation with a fine of no less than five thousand dollars ($5,000), not to exceed ten thousand dollars ($10,000); or imprisoned for a fixed term of three (3) years, or both. If aggravating circumstances exist, the fixed jail term may be increased to a maximum of five (5) years; and if mitigating circumstances are present, the jail term may be reduced to a minimum of two (2) years.

**NOTICE TO RHODE ISLAND CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO TENNESSEE CLAIMANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**NOTICE TO TEXAS CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**NOTICE TO VIRGINIA CLAIMANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**NOTICE TO WASHINGTON CLAIMANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**NOTICE TO WEST VIRGINIA CLAIMANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

# NOTICE TO POLICYHOLDERS

**NOTICE TO ALL OTHER STATE CLAIMANTS:** Any person who knowingly includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**THE CLAIMANT REPRESENTS THAT THE ABOVE STATEMENTS AND FACTS ARE TRUE AND THAT NO MATERIAL FACTS HAVE BEEN SUPPRESSED OR MISSTATED.**

_____          _____          _____
Signature of Claimant                          Printed Name                                    Date

              2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.



**Regulatory Office**
505 Eagleview Blvd., Ste. 100
Dept: Regulatory
Exton, PA 19341-1120
(800) 688-1840

**Company Providing Coverage:**       **Indian Harbor Insurance Company**

# PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)

## PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS

---

This is a "Claims-made and Reported" policy. This policy requires that a **Claim** be made against or by the **Insured** during the **Policy Period** or optional extended reporting period, and reported to us, in writing, during the **Policy Period**, automatic extended reporting period or optional extended reporting period. Certain states mandate specific warnings, exceptions or conditions. Please read this policy carefully, including the Declarations and all Endorsements.

This policy contains provisions which limit the amount of **Legal Expense** we are responsible to pay in connection with **Claims**. **Legal Expense** shall be subject to any Self-Insured Retention Amount. The payment of **Legal Expense** will reduce the Limits of Liability stated in Item 3. of the Declarations.

---

## Declarations

|  |  |
|---|---|
| Policy Number: | CEO744654902 |
| Renewal of: | CEO744654901 |

| | | | |
|---|---|---|---|
| **Named Insured:** | **1.** | Southland Industries | |
| Address: | | 7390 Lincoln Way | |
| City, State, Zip: | | Garden Grove, CA 92841 | |
| **Policy Period:** | **2.** | From: 12:01 A.M. Standard time | December 18, 2018 |
| | | To: 12:01 A.M. Standard time | December 18, 2019 |
| | | At the address shown in Item 1. Above | |

© 2015 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

Specific Coverages, Limits of Liability, Self-Insured Retention Amounts and **Retroactive Date(s)**:

**3.** This policy only includes the coverages stated in Section 1. What We Cover, for which Limits of Liability, a Self-Insured Retention Amount, and **Retroactive Date** are shown below. If Limits of Liability, a Self-Insured Retention Amount, and **Retroactive Date** are not shown below for a specific coverage, that specific coverage does not apply:

Professional Liability Coverage:

**A.**
$ 15,000,000   Each **Claim** Limit of Liability
$ 15,000,000   Professional Liability Coverage Aggregate Limit
$ 250,000   Self-Insured Retention
**Retroactive Date**: June 17, 1949

Rectification Coverage:

**B.**
$ 5,000,000   Each **Rectification Expense** Limit of Liability
$ 5,000,000   Rectification Coverage Aggregate Limit
$ 250,000   Self-Insured Retention
**Retroactive Date**: December 18, 2008

Protective Loss Coverage:

**C.**
$ 15,000,000   Each **Claim** Limit of Liability
$ 15,000,000   Protective Loss Coverage Aggregate Limit
$ 0   Self-Insured Retention
**Retroactive Date**: June 17, 1949

Pollution Loss Coverage:

Job Site:

**D.1.**
$ 15,000,000   Each **Claim** Limit of Liability
$ 15,000,000   Pollution Loss Coverage Aggregate Limit
$ 100,000   Self-Insured Retention
**Retroactive Date**: June 17, 1949

Transportation:

**D.2.**
$ 15,000,000   Each **Claim** Limit of Liability
$ 15,000,000   Pollution Loss Coverage Aggregate Limit
$ 100,000   Self-Insured Retention

Non-Owned Disposal Site:

**D.3.**
$ 15,000,000   Each **Claim** Limit of Liability
$ 15,000,000   Pollution Loss Coverage Aggregate Limit
$ 100,000   Self-Insured Retention
**Retroactive Date**: June 17, 1949

Named Insured's Location:

**D.4.**
$ 15,000,000   Each **Claim** Limit of Liability
$ 15,000,000   Pollution Loss Coverage Aggregate Limit
$ 100,000   Self-Insured Retention

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

| | | | | |
|---|---|---|---|---|
| Emergency Remediation Coverage: | E. | $ | 15,000,000 | Each **Claim** Limit of Liability |
| | | $ | 15,000,000 | Emergency Remediation Coverage Aggregate Limit |
| | | $ | 100,000 | Self-Insured Retention |
| Policy Aggregate Limit of Liability: | F. | $ | 15,000,000 | |
| Policy Premium: | 4. | $ | 338,905 | |
| Certified Acts of Terrorism Premium: | | $ | N/A | |
| Total Policy Premium: | | $ | 338,905 | |
| Minimum Earned Premium: | 5. | | 25% | |
| Notices and Claims to be sent to: | 6. | XL Catlin<br>P.O. Box 614002<br>Orlando, FL 32861-4002<br>napropcasclaimnewnotices@xlcatlin.com | | |
| Endorsements: | 7. | See attached schedule for endorsements attached at policy issuance | | |
| Broker: | 8. | Lockton Companies, LLC | | |
| Address: | | 444 W. 47th Street, Suite 900 | | |
| City, State, Zip: | | Kansas City, MO 64112-1906 | | |

By: _____

      Authorized Representative

**ENDORSEMENT #001**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**SCHEDULE**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

| Policy Form / Endorsement Number | Policy Form Number / Endorsement Form Number | Policy Form / Endorsement Title |
|---|---|---|
| | KLD 000 0815 | PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made) Professional & Pollution Liability For Construction Contractors And Construction Support Services Providers - Declaration Page |
| Endorsement #001 | KLD 300 1214 | Schedule |
| | IL MP 9104 0314 IHIC | In Witness – Indian Harbor Insurance Company |
| | KLD 050 0113 | PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made) Professional & Pollution Liability For Construction Contractors And Construction Support Services Providers - Policy Form |
| Endorsement #002 | XL-CASOP 0118 | Service of Process |
| Endorsement #003 | KLD 400 1214 | Manuscript Endorsement - Additional Named Insured Schedule |
| Endorsement #004 | KLD 400 1214 | Manuscript Endorsement - Named Insured's Location Schedule |
| Endorsement #005 | KLD 400 1214 | Manuscript Endorsement - Inclusion Of Technology Services & Environmental Activity |
| Endorsement #006 | KLD 400 1214 | Manuscript Endorsement - Legal Expense In Addition To The Limits Of Liability – Coverage A – Professional Liability And Coverage D.1 Pollution Loss Coverage |
| Endorsement #007 | KLD 400 1214 | Manuscript Endorsement - Amendment To Conditions – Choice Of Law, Jurisdiction And Venue |
| Endorsement #008 | KLD 400 1214 | Manuscript Endorsement - Disaster Response Expense |
| Endorsement #009 | KLD 400 1214 | Manuscript Endorsement - Supplemental Coverages |
| Endorsement #010 | KLD 400 1214 | Manuscript Endorsement - Indemnity Agreement For Evidencing A Reduced Self-Insured Retention Amount Endorsement |
| Endorsement #011 | KLD 400 1214 | Manuscript Endorsement - Retroactive Dates For Specific Entities |
| Endorsement #012 | KLD 400 1214 | Manuscript Endorsement - Amendment To Related Entities And Individuals Exclusion |

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| | | |
|---|---|---|
| Endorsement #013 | KLD 400 1214 | Manuscript Endorsement - The Regents Of The University Of California Claims |
| Endorsement #014 | KLD 600 0115 | Amendment To Hostile Acts Exclusion |

**INFORMATION NOTICES:**

| | |
|---|---|
| PN CA 05 0117 | Notice To Policyholdes – California – Surplus Lines Notice |
| PN CW 01 0617 | Notice To Policyholders - Fraud Notice |
| PN CW 02 1015 | Notice To Policyholders - Privacy Policy |
| PN CW 05 1017 | Notice To Policyholders - U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") |
| PN CA 02 0117 | Notice To Policyholders - Important Information to Policyholders - California |
| NTD 010 1015 | Notice To Policyholders - Construction Professional Liability |

All other terms, conditions and exclusions of this policy remain unchanged.

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

| | |
|---|---|
| Joseph Tocco | Toni Ann Perkins |
| President | Secretary |

IL MP 9104 0314 IHIC
©2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

## PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)

### PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS

This is a "Claims-made and Reported" policy. This policy requires that a **Claim** be made against or by the **Insured** during the **Policy Period** or optional extended reporting period, and reported to us, in writing, during the **Policy Period**, automatic extended reporting period or optional extended reporting period. Certain states mandate specific warnings, exceptions or conditions. Please read this policy carefully, including the Declarations and all Endorsements.

This policy contains provisions which limit the amount of **Legal Expense** we are responsible to pay in connection with **Claims**. **Legal Expense** shall be subject to any Self-Insured Retention Amount. The payment of **Legal Expense** will reduce the Limits of Liability stated in Item 3. of the Declarations.

Throughout this policy the words "you/your" refer to the **Named Insured** and the words "we/us/our" refer to the Company stated on the Declarations.

In consideration of the payment of the premium stated in Item 4. of the Declarations and in reliance upon the statements contained in the Application and any other supplemental materials and information submitted herewith, and subject to all the terms and conditions of this policy, we agree with you as follows:

---

## SECTION 1: WHAT WE COVER

*Claims made against you by your Clients and other Third Parties due to Professional Loss*

**A.  Professional Liability Coverage**

We will pay on behalf of the **Insured** for **Professional Loss** which the **Insured** becomes legally obligated to pay because of a **Professional Liability Claim** resulting from a negligent act, error, or omission in **Professional Activities and Duties**, provided that:

1.  the **Professional Liability Claim** arises out of **Professional Activities and Duties** rendered on or after the **Retroactive Date** and prior to the expiration of the **Policy Period**; and

2.  the **Professional Liability Claim** is first made against the **Insured** during the **Policy Period** and reported to us, in writing, during the **Policy Period** or, where applicable, the Extended Reporting Period.

*Costs associated with mitigation and rectification*

**B.  Rectification Coverage**

We will indemnify the **Insured** for **Rectification Expense** reasonably and necessarily incurred with respect to any action to mitigate or rectify a negligent act, error, or omission arising from **Professional Activities and Duties** that would otherwise lead to a **Professional Liability Claim** covered under this policy, provided that:

1.  the **Professional Activities and Duties** are rendered on or after the **Retroactive Date** and prior to the expiration of the **Policy Period**;

2.  during the **Policy Period**, the **Insured** must provide us with immediate notice of the negligent act, error, or omission arising from **Professional Activities and Duties** and of the proposed corrective action, if any, along with all supporting documentation, in writing prior to incurring any **Rectification Expense**; and

© 2013 X.L. America, Inc.
All Rights Reserved. May not be copied without permission.

3.  all **Rectification Expense** must be approved by us, in writing, prior to being incurred by the **Insured**.

If following the payment of **Rectification Expense**, a **Professional Liability Claim** is still made against the **Insured**, our total payment, including any payments previously paid by us will not exceed the Limits of Liability shown in Item 3. of the Declarations.

If, in order to prevent or mitigate further harm, the **Insured** takes any immediate action that could incur **Rectification Expense**, but is not reasonably able to obtain prior approval from us in writing, we will indemnify the **Insured** for such expense incurred over a period not exceeding ten (10) business days, beginning from the time the immediate action was taken, provided the **Insured** can reasonably prove to us that such immediate action reduced the amount of the loss that would otherwise have been paid under this policy in the absence of such immediate action.

*Claims made by you against a Design Professional for losses you sustain resulting from their breach of the professional duty of care*

**C.   Protective Loss Coverage**

We will indemnify the **Insured** for **Protective Loss** in excess of the **Design Professional's Insurance** resulting from a negligent act, error, or omission in **Design Professional Services** performed by a **Design Professional**, provided that:

1.  the **Design Professional Services** are rendered on or after the **Retroactive Date** and prior to the expiration of the **Policy Period**;

2.  the **Protective Claim** is first made by the **Insured** against the **Design Professional** and reported by the **Insured** to us, in writing, during the **Policy Period** or, where applicable, the Extended Reporting Period; and

3.  the **Insured** has taken all steps necessary to pursue the **Protective Claim** and obtain recovery of all **Protective Loss** from the **Design Professional** and the **Design Professional's Insurance**.

*Claims made against you by your Clients and other Third Parties due to Pollution Loss*

**D.   Pollution Loss Coverage**

We will pay on behalf of the **Insured** for **Pollution Loss** which the **Insured** becomes legally obligated to pay because of a **Pollution Claim** resulting from a:

**Job Site**

1.  **Pollution Condition** on, at, under or migrating from a **Job Site**, provided that:

    a.  the **Pollution Condition** results from **Contracting Activity** rendered on or after the **Retroactive Date** and prior to the expiration of the **Policy Period**; and

    b.  the **Pollution Claim** is first made against the **Insured** during the **Policy Period** and reported to us, in writing, during the **Policy Period** or, where applicable, the Extended Reporting Period.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**Transportation**

2. **Pollution Condition** which first commences and finally ends during the course of **Transportation**, provided that:

   a.  the **Transportation** takes place during the **Policy Period**;

   b.  the **Pollution Condition** is first discovered by the **Insured** during the **Policy Period** and reported to us, in writing, during the **Policy Period** or, where applicable, the Extended Reporting Period; and

   c.  the **Pollution Claim** is first made against the **Insured** during the **Policy Period** and reported to us, in writing, during the **Policy Period** or, where applicable, the Extended Reporting Period.

**Non-Owned Disposal Site**

3. **Pollution Condition** originating on, at, under or migrating from a **Non-owned Disposal Site**, provided that:

   a.  the **Pollution Condition** arises from waste or material generated by **Contracting Activity** performed at a **Job Site** or originating from a **Named Insured's Location**;

   b.  the **Pollution Condition** commenced on or after the **Retroactive Date** and prior to the expiration of the **Policy Period**; and

   c.  the **Pollution Claim** is first made against the **Insured** during the **Policy Period** and reported to us, in writing, during the **Policy Period** or, where applicable, the Extended Reporting Period.

**Named Insured's Location**

4. **Pollution Condition** on, at, under or migrating from a **Named Insured's Location**, provided that:

   a.  the **Pollution Condition** originated from a **Named Insured's Location**; and

   b.  the **Pollution Condition** is sudden and accidental and first commences during the **Policy Period** and finally ends within ten (10) consecutive days from its first commencement; and

      (i)  the **Pollution Condition** is first discovered by the **Named Insured** during the **Policy Period** and reported to the company, in writing, during the **Policy Period**, or where applicable, the Extended Reporting Period; or

      (ii)  the **Pollution Condition** results in a **Claim** against the **Named Insured**; (2) the **Claim** is for **Pollution Loss** which the **Named Insured** becomes legally obligated to pay; and (3) the **Claim** is first made against the **Named Insured** during the **Policy Period** and reported to the Company, in writing, during the **Policy Period**, or where applicable, the Extended Reporting Period.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| | | |
|---|---|---|
| *Costs associated with Emergency Remediation* | **E.** | **Emergency Remediation Coverage** |

We will indemnify the **Insured** for **Emergency Remediation Expense** reasonably and necessarily incurred by the **Insured** prior to providing notice to us, provided that:

1. the **Pollution Condition** is first discovered by the **Insured** during the **Policy Period** and reported to us, in writing, during the **Policy Period**, but in no event later than ten (10) business days from the discovery of the **Pollution Condition**, or the expiration of the **Policy Period**, whichever occurs first; and

2. notice of the **Emergency Remediation Expense** is provided to us as soon as practicable following the discovery of the **Pollution Condition**, but in no event later than ten (10) business days from the discovery of the **Pollution Condition**, or the expiration of the **Policy Period**, whichever occurs first;

3. the **Pollution Condition** results from **Contracting Activities** rendered during the policy period the **Policy Period**; and

4. the **Pollution Claim** is on, at, under or migrating from a **Job Site**.

---

## SECTION 2:  DEFINITIONS

The following terms have special meaning within this policy:

---

**Bodily Injury**  **A.**  means physical injury, sickness or disease, sustained by any person, including death resulting therefrom or mental anguish, emotional distress or shock, sustained by any person caused by a **Pollution Condition**. Furthermore **Bodily Injury** shall extend to include medical monitoring but only when such medical monitoring is a direct result of physical injury caused by a **Pollution Condition.**

**Claim**  **B.**  means **Professional Liability Claim**, **Pollution Claim** and/or **Protective Claim**.

**Client**  **C.**  means the person or organization that directly hires the **Insured**, by written contract signed by the **Insured**, to perform **Contracting Activities** and for whom the **Insured** renders such services.

**Contracting Activity(ies)**  **D.**  means any general construction activity performed by or on behalf of the **Named Insured**.

**Design Professional**  **E.**  means any person or entity that is legally qualified, certified or licensed to perform services which are covered by **Design Professional's Insurance**, including subcontractors and subconsultants at any tier.

**Design Professional's Insurance**  **F.**  means all architects and engineers, or contractors professional liability insurance policies which insure a **Design Professional**.

**Design Professional Services**  **G.**  means services that any **Design Professional**:

1. agreed to perform pursuant to a written contract with the **Insured**;

2. which are included within the **Professional Activities and Duties** that the **Insured** agreed to perform in a written contract; and

3. which are covered by **Design Professional's Insurance**.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| **Emergency Remediation Expense** | **H.** | means direct costs and expenses that we deem necessary to mitigate on an emergency basis the immediate effects of a **Pollution Condition** at a **Job Site** resulting from the rendering or failure to render **Contracting Activities**. |
|---|---|---|

| **Insured** | **I.** | means each of the following: |
|---|---|---|

1. the **Named Insured**;

2. your current or former directors, partners, principals, members, executive officers, stockholders, or trustees, but solely within the course and scope of their duties as such;

3. your current or former employees including leased personnel under your supervision, but solely within the course and scope of their employment or lease agreement;

4. your heirs, executors, administrators, assigns or legal representatives in the event of death, incapacity or bankruptcy, but only with respect to the liability of the **Named Insured** otherwise insured herein;

5. any **Predecessor in Interest**;

6. any entity that is newly formed or acquired by you during the **Policy Period** where you have greater than fifty percent (50%) ownership, control, or beneficial interest, provided however that:

    a. coverage shall be provided only for **Professional Loss** arising out of **Professional Activities and Duties** and/or **Pollution Loss** arising from **Contracting Activity** performed on or after the date of formation or acquisition, subject to the **Retroactive Date**; and

    b. this coverage shall expire at the end of the **Policy Period** or within ninety (90) days of such formation or acquisition of the entity, whichever is earlier, unless you submit written notice to us providing detailed information concerning the newly formed or acquired entity, confirmed by us by endorsement, and provided that you pay any applicable additional premium requested by us;

7. Any **Insured** with regard to its participation in a legal entity including a limited liability company or joint venture, but only to the extent of the **Insured's** legal liability for its rendering of **Professional Activities and Duties** and/or **Contracting Activities** under the respective legal entity or joint venture;

8. With regard to Section 1: What We Cover D.1., the **Client**, but only:

    a. if the you are required to include the **Client** as an additional **Insured** in a written contract in effect during the **Policy Period** and signed by the you prior to the first commencement of the **Pollution Condition**; and

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

      b.    with respect to the **Client**'s vicarious liability resulting from your **Contracting Activity**.

9. With regard to Section 1: What We Cover D.1., all persons or organizations, other than a **Client**, as required by a written contract executed by the **Named Insured**, but only for:

      a.    a **Pollution Condition** caused by your **Contracting Activity**; and

      b.    the vicarious liability of the person or organization that results from the performance of your **Contracting Activity**

           provided that such written contract is signed by the **Named Insured** prior to the commencement of the **Pollution Condition**.

**Insured Contract**  J.  means that part of any written contract or written agreement under which you assume the Tort Liability of another party to pay compensatory damages for **Bodily Injury** or **Property Damage**, to a third person or organization, provided that such written contract or written agreement is signed by you prior to the **Bodily Injury** or **Property Damage**. Tort Liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Job Site**  K.  means the location where **Contracting Activities** are being rendered.

      **Job Site** does not include any location that is owned, rented, leased, used, or occupied by any **Insured** except for: (i) a location owned, rented, leased, or occupied by the **Client**; or (ii) a location that is rented, leased, or occupied (but not owned) by you and is used on a temporary basis by the **Insured** for a single project only, during the course of providing **Contracting Activities** for such single project.

      **Job Site** also does not include a **Non-owned Disposal Site**.

**Legal Expense**  L.  means legal costs, charges, and expenses incurred in the investigation or defense of a **Professional Liability Claim** arising from **Professional Activities and Duties** or a **Pollution Claim** arising from **Contracting Activity** provided such costs, charges and expenses are authorized by us.

      **Legal Expense** does not include the time and expense incurred by the **Insured** in assisting in the investigation or resolution of a **Professional Liability Claim** or **Pollution Claim** including, but not limited to, the costs of the **Insured's** in-house counsel, salary charges of regular employees or officials of the **Insured**, and fees and expenses of counsel retained by the **Insured**.

      **Legal Expense** also does not include salary charges of our employees.

      **Legal Expense** does not apply to **Rectification Expense** or **Emergency Remediation Expense** as set forth in Section 1: What We Cover nor to any legal costs or expenses incurred by the **Insured** in the investigation, prosecution, pursuit, adjustment, making or appeal of a **Protective Claim** against a **Design Professional**.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| | | |
|---|---|---|
| **Low-level Radioactive Waste and Material** | **M.** | means: |

1. Waste as defined in Title 10 Code of Federal Regulations, Part 61.2; and/or

2. material regulated by the United States Nuclear Regulatory Commission or an Agreement State under a Type A, B or C Specific License of Broad Scope as defined in Title 10 Code of Federal Regulations, Part 33.11.

**Mold Matter** **N.** means mold, mildew or any type or form of fungus, including mycotoxins, spores or by-products produced or released by fungi.

**Named Insured** **O.** means the person or entity listed in Item 1. of the Declarations and any other person or entity designated as a **Named Insured** by endorsement to this policy.

**Named Insured's Location** **P.** means a location owned, rented, or leased, if any, by the **Named Insured**, provided that such location is listed in the Named Insured's Location Schedule endorsed onto this policy.

The **Named Insured's Location** does not include a **Job Site** or **Non-Owned Disposal Site**.

**Natural Resource Damage** **Q.** means physical injury to or destruction of, as well as the assessment of such injury or destruction, including the resulting loss of value of land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act 16 U.S.C. 1801 et. seq.), any State, Local or Provincial government, any foreign government, any Native American tribe or, if such resources are subject to a trust restriction on alienation, any member of a Native American tribe.

**Non-Owned Disposal Site** **R.** means a location used by the **Insured** for the treatment, storage or disposal of waste or material, provided that:

1. the waste or material is generated by **Contracting Activity** performed by the **Insured** at a **Job Site** or originates from a **Named Insured's Location**;

2. the **Non-owned Disposal Site** is not managed, operated, owned or leased by any **Insured** or an affiliate of any **Insured**;

3. the **Non-owned Disposal Site** is permitted and/or licensed by the applicable Federal, State, Local or Provincial authorities to accept such waste or material as of the date the waste or material is treated, stored or disposed at the **Non-owned Disposal Site**; and

4. the **Non-owned Disposal Site** is not listed on a proposed or final Federal National Priorities List and/or any State or Provincial equivalent National Priority List, Superfund or Hazardous Waste List prior to the treatment, storage or disposal of the waste or material at the **Non-owned Disposal Site**.

**Policy Period** **S.** means the period listed in Item 2. of the Declarations or any shorter period resulting from cancellation or rescission.

© 2013 X.L. America, Inc.
All Rights Reserved. May not be copied without permission.

**Pollutants** **T.** means any solid, liquid, gaseous or thermal pollutant, irritant or contaminant including, but not limited to, smoke, vapors, odors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, electromagnetic fields, **Low-level Radioactive Waste and Material, Mold Matter,** Legionella, and waste materials, including medical, infectious and pathological wastes.

**Pollution Claim** **U.** means a monetary demand or notice, or assertion of a legal right alleging liability or responsibility on the part of the **Insured** and includes a lawsuit, petition, or governmental or regulatory action commenced against the **Insured** arising out of a **Pollution Condition**.

**Pollution Condition** **V.** means:

1. the discharge, dispersal, release, seepage, migration or escape of **Pollutants** into or upon land, or structures thereupon, the atmosphere or any watercourse or body of water, including groundwater; and

2. the presence of **Mold Matter** in or on buildings or structures.

**Pollution Loss** **W.** means any of the following arising out of a **Pollution Condition**:

1. a monetary judgment, award, or settlement of compensatory damages: (i) resulting from **Bodily Injury,** including costs for medical monitoring but only when such medical monitoring is a direct result of physical injury, or **Property Damage**; or (ii) for **Remediation Expense**;

2. civil fines and penalties assessed against a **Client** for which the **Insured** is legally liable, but only where insurance coverage for such fines and penalties is allowable by law;

3. civil fines and penalties assessed against the **Insured**, but only where insurance coverage for such fines and penalties is allowable by law;

4. punitive, exemplary, or multiplied damages for which the **Insured** is legally liable, but only where insurance coverage for such damages is allowable by law;

5. solely with respect to Coverage D.3 and D.4, as set forth in Section 1: What We Cover, **Remediation Expense**;

6. **Restoration Costs**; and

7. **Legal Expense** associated with Subsections 1. through 6. of this definition.

**Pollution Loss** does not include:  (a) injunctive or equitable relief; (b) the return of fees or charges for services rendered; or (c) any of the **Insured's** overhead, mark-up or profit.

**Predecessor in Interest** **X.** means any prior entity whose assets have been acquired by you or whose partners, principals or shareholders have joined the **Insured** and whose name has been provided in the Application and for whose insurance the **Insured** is responsible by written agreement.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| | | |
|---|---|---|
| **Professional Activities and Duties** | Y. | means those activities whether part of, incidental to, or for which you have responsibility in your business as a construction contractor, construction manager, construction support services provider, or as stated in Sections 4. and 5. of the Application for this insurance policy executed by you, which are undertaken by or under the supervision of persons or personnel who have attained an appropriate professional qualification, certification or license, where applicable. |
| **Professional Liability Claim** | Z. | means a monetary demand or notice, or assertion of a legal right alleging liability or responsibility on the part of the **Insured** and includes a lawsuit, petition, or governmental or regulatory action commenced against the **Insured** arising out of **Professional Activities and Duties**. |
| **Professional Loss** | AA. | means any of the following arising out of **Professional Activities and Duties**: |

1. a monetary judgment, award, or settlement of compensatory damages;

2. civil fines and penalties assessed against the **Insured**, but only where insurance coverage for such fines and penalties is allowable by law;

3. civil fines and penalties assessed against a third party other than an **Insured** for which the **Insured** is legally liable, but only where insurance coverage for such fines and penalties is allowable by law;

4. punitive, exemplary, or multiplied damages for which the **Insured** is legally liable, but only where insurance coverage for such damages is allowable by law;

5. liquidated damages, but only to the extent that the **Insured** would be legally liable in the absence of such agreement for liquidated damages; and

6. **Legal Expense** associated with Subsections 1. through 5. of this definition.

**Professional Loss** does not include:  (a) injunctive or equitable relief; (b) the return of fees or charges for services rendered; or (c) any of the **Insured's** overhead, mark-up or profit.

| | | |
|---|---|---|
| **Property Damage** | BB. | means each of the following caused by a **Pollution Condition**: |

1. physical injury to or destruction of tangible property, including the resulting loss of use thereof;

2. loss of use of tangible property that has not been physically injured or destroyed;

3. diminished third-party property value; and

4. **Natural Resource Damage**.

| | | |
|---|---|---|
| **Protective Claim** | CC. | means a written demand made or lawsuit commenced by the **Insured** against a **Design Professional** alleging liability or responsibility on the part of the **Design Professional** for **Protective Loss** arising out of the **Design Professional's** rendering or failure to render **Design Professional Services**. |

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| | | |
|---|---|---|
| **Protective Loss** | **DD.** | means the amount the **Insured** is legally entitled to recover from the **Design Professional** as determined by: |

1. a final monetary judgment by a court of competent jurisdiction;

2. a final monetary award resulting from an arbitration or other dispute resolution proceeding, in which the **Insured** participates with our prior written consent; or

3. a settlement to which we agree in advance in writing.

| | | |
|---|---|---|
| **Rectification Expense** | **EE.** | means direct costs and expenses that we deem necessary to rectify a negligent act, error, or omission in the **Insured's Professional Activities and Duties** or to prevent further damages resulting from said act, error, or omission. |

**Rectification Expense** does not include any of the **Insured's** profit, overhead, or mark-up, or any betterment to a project to which **Rectification Expense** applies.

| | | |
|---|---|---|
| **Remediation Expense** | **FF.** | means expense resulting from a **Pollution Condition** and incurred to investigate, assess, remove, dispose of, treat, abate, contain or neutralize a **Pollution Condition**, including any associated monitoring and testing costs. |

| | | |
|---|---|---|
| **Responsible Insured** | **GG.** | means any officer, director, partner, member, manager, supervisor or foreman of the **Insured** or any employee of the **Insured** who has responsibility, in whole or in part, for risk control or risk management. |

| | | |
|---|---|---|
| **Restoration Costs** | **HH.** | means reasonable and necessary costs incurred by the **Insured** to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring **Remediation Expense**. |

However, these costs will not exceed the Actual Cash Value of such real or personal property immediately prior to incurring the **Remediation Expense** or include costs associated with improvements or betterments. Actual Cash Value is defined as the cost to replace such real or personal property, immediately prior to incurring the **Remediation Expense**, minus the accumulated depreciation of the real or personal property.

| | | |
|---|---|---|
| **Retroactive Date** | **II.** | means the date listed in Item 3. of the Declarations for each applicable coverage specified. |

| | | |
|---|---|---|
| **Transportation** | **JJ.** | means the movement of waste or material by motorized land vehicle, watercraft or rolling stock, including the loading and unloading of such waste or material, provided that: |

1. the **Pollution Condition** occurs at a location other than the **Job Site**; and

2. the person or entity transporting the waste or material is properly licensed to transport such waste or material by motorized land vehicle, watercraft or rolling stock.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

Loading and unloading means all loading and unloading activities except for those activities which occur during the course of disposal, abandonment, or final delivery of such waste or material.

Transportation does not mean ownership, maintenance, use, operation, loading or unloading of any air or spacecraft, including any machinery or apparatus attached thereto or any cargo carried thereby, including space shuttles.

| | | |
|---|---|---|
| **Underground Storage Tank** | **KK.** | means any stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is: (i) constructed primarily of non-earthen materials; and (ii) designed to contain any substance. |

---

## SECTION 3:  WHAT WE DO NOT COVER

We will not make any payment for a claim or costs directly or indirectly due to:

*Knowledge of pre-existing conditions:*

**A.**  *Known Circumstances or Conditions:* arising from:

1. a **Claim, Professional Loss, Protective Loss, or Pollution Condition**, known by a **Responsible Insured** prior to the inception of the **Policy Period**; or

2. a circumstance or condition known by a **Responsible Insured** prior to the inception of the **Policy Period** where the **Responsible Insured** should have reasonably foreseen a **Claim, Professional Loss, Protective Loss, Pollution Condition, Rectification Expense** or **Emergency Remediation Expense** being incurred.

**B.**  *Notices to Previous Insurers:* arising from any **Claim, Rectification Expense, Emergency Remediation Expense**, suit, negligent act, error, or omission, **Pollution Condition** or other circumstance  arising out of **Professional Activities and Duties**, or **Contracting Activities** reported by the **Insured** under any prior policy issued by a person or organization other than us or any entity affiliated with us.

*Matters related to your business conduct:*

**C.**  *Intentional and Dishonest Acts:* arising from any actual or alleged:

1. intentional disregard of, or non-compliance with, any statute, regulation, ordinance, law, or order, by or at the direction of the **Insured** or its agent; or

2. fraudulent, dishonest, or malicious conduct by the **Insured**.

This exclusion does not apply to any **Insured** that did not commit or participate in committing any of the forgoing described above.

**D.**  *Employment Practices:* arising from the refusal to employ, termination of employment, coercion, evaluation, reassignment, discipline, wrongful infliction of emotional distress or other employment-related torts, harassment, discrimination, wrongful deprivation of a career opportunity, breach of any oral, written or implied employment contract or quasi-employment contract, violation of any federal, state or local statute, regulation, ordinance, common law, or public policy concerning employment or discrimination in employment.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**E.**   *Securities Violation:* arising from any violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any state Blue Sky or securities law or similar state, federal, or other governmental law, statute and any regulation or order issued pursuant to any of the foregoing statutes.

*Matters insurable elsewhere:*   **F.**   *Workers' Compensation and Similar Laws:* arising from any obligation of the **Insured** under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**G.**   *Employer's Liability:* arising from any injury to:

1. any employee, director, officer, partner, or member of the **Insured**, or leased personnel under the supervision of the **Insured**, but solely within the course and scope of their employment or lease agreement if such injury arises in the course of: (a) employment by the **Insured**; or (b) performing duties related to the conduct of the **Insured's** business; or

2. the spouse, child, parent, brother, or sister of such employee, director, officer, partner, or member of the **Insured**, or leased personnel under the supervision of the **Insured**, but solely within the course and scope of their employment or lease agreement, as a consequence of any injury to any of the persons described in Subsection G.1. above.

This exclusion does not apply to liability assumed by the **Insured** in a contract or agreement that is an **Insured Contract**.

**H.**   *Fiduciary Liability:* arising from any involvement by an **Insured** as:

1. an officer, director, partner, member, trustee, employer, or employee of a business enterprise or any charitable organization, or pension, welfare, profit sharing, mutual, or investment fund or trust; or

2. a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto, or any other employee benefit plan.

*Matters relating to war and hostile acts, and nuclear:*   **I.**   *Hostile Acts:* arising from any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, or military or usurped power, strike, riot, or civil commotion or terrorism, including any act which is certified by the United States Secretary of the Treasury as a "act of terrorism" as defined by the Terrorism Risk Insurance Act of 2002 or any amendment thereto.

**J.**   *Radioactive/Nuclear Material:* arising out of:

1. ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the processing or reaction of nuclear fuel;

2. the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

3. the existence, required removal or abatement of Naturally Occurring Radioactive Materials, including but not limited to radon;

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

4. high-level radioactive waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues and waste with greater than specified quantities of elements heavier than uranium; or

5. Mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this clause 5. does not apply to Mixed Waste that contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2,

including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

**Demands and claims brought by a related entity or party:**

**K.** *Insured versus Insured:* arising from any **Claim** made by an **Insured** against any other **Insured**.

This exclusion does not apply to a **Pollution Claim** by a **Client**.

**L.** *Related Entities and Individuals:* arising from a **Claim** by an entity or individual:

1. that wholly or partially owns, operates, or manages an **Insured**;

2. in which an **Insured** has a direct or indirect ownership interest of twenty-five percent (25%) or more;

3. that is controlled, operated, or managed by an **Insured**; or

4. that is an affiliate of an **Insured**.

**Matters related to warranties:**

**M.** *Contractual Liability:* arising from the **Insured's**:

1. assumption of liability in a contract or agreement; or

2. breach of contract or agreement.

This exclusion does not apply to: (i) liability arising out of a negligent act, error or omission, and that the **Insured** would have in the absence of a contract or agreement; or (ii) solely with regard to Pollution Loss Coverage, liability assumed by the **Named Insured** in a contract or agreement that is an **Insured Contract**.

**N.** *Express Warranties and Guaranties:* arising from any express warranty or guaranty.

This exclusion does not apply to liability the **Insured** would have in the absence of such express warranty or guaranty.

**Matters related to faulty workmanship:**

**O.** *Faulty Workmanship:* arising from the cost to repair or replace faulty workmanship, construction, fabrication, installation, assembly, erecting, or manufacturing process performed or provided by the **Insured** or anyone for whom the **Insured** is legally responsible, including materials, parts, or equipment furnished in connection therewith, including any workmanship which is not in accordance with the drawings and specifications with respect to any construction, fabrication, installation, assembly, erecting, or manufacturing process.

© 2013 X.L. America, Inc.
All Rights Reserved. May not be copied without permission.

This exclusion will not apply to **Professional Loss**, **Rectification Expense**, or **Protective Loss**, which results from a negligent act, error, or omission in the rendering of or failure to render **Professional Activities and Duties** or **Design Professional Services** by an **Insured** or others for whom the **Insured** is legally responsible.

*Matters related to your development, manufacture or sale of products:*

**P.**  *Products:* arising from any goods, materials, or products designed, manufactured, sold, handled, distributed, and/or supplied by any **Insured, Design Professional** or by others under license or trade name from any **Insured** or **Design Professional.** This exclusion will not apply to computer software or programs specifically developed for an individual client which are not available for general sale and distribution, and which are provided in conjunction with **Professional Activities and Duties** or **Design Professional Services.**

*Matters related to Protective Loss Coverage:*

**Q.**  *Default Judgment:* arising out of a default judgment or monetary award where the **Design Professional** failed to answer, plead and otherwise defend itself or indemnify you in connection with a **Protective Claim**.

This exclusion does not apply if the **Insured** cooperates with us to establish what would have been recovered from the **Design Professional** in the absence of such default judgment or monetary award where the **Design Professional** failed to appear, plead or otherwise defend itself or indemnify you.

*Matters related to Pollution Loss Coverage:*

**R.**  *Property:* arising out of:

1.  arising out of any real property owned by the **Named Insured**, except for the **Named Insured's Location**; or

2.  for the repair, replacement or restoration of any personal property in the care, custody or control of the **Insured**, other than personal property owned or leased by, or in the care, custody or control of, the **Client**.

*Matters related to Pollution Loss Coverage – Named Insured Location Coverage Only:*

**S.**  *Asbestos and Lead-Based Paint:* arising out of the existence of, required removal or abatement of asbestos or lead-based paint, in any form, including but not limited to, products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials.

This exclusion only applies to Section I: D. 4.

**T.**  *Divested Location:* arising from any **Pollution Condition** on, at, under or migrating from a location where the actual discharge, dispersal, release, seepage, migration or escape of **Pollutants** commenced subsequent to the time such location was sold, given away, no longer used, or abandoned by an **Insured**, or condemned.

This exclusion does not apply to a **Pollution Condition** on, at, under or migrating from a **Job Site**.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**U.**   *Material Change in Use:* arising out of a material change in the use of, or operations at, a **Named Insured's Location** from the use or operations identified by the **Insured** in the statements and information contained in the **Application** and other supplemental materials submitted to the Company prior to the inception of the **Policy Period** or prior to adding such location to the Named Insured's Location Schedule contained within this endorsement.

**V.**   *Underground Storage Tank:* arising out of the existence of any **Underground Storage Tank** on, at or under a **Named Insured's Location**.

This exclusion does not apply to:

1. an **Underground Storage Tank** that is closed, abandoned in place or removed prior to the inception date of this policy, in accordance with all applicable Federal, State, Local or Provincial regulations, in effect at the time of closure, abandonment or removal;

2. an **Underground Storage Tank** that is identified in the Named Insured's Location Schedule endorsed onto this policy;

3. an **Underground Storage Tank**, the existence of which is unknown by a **Responsible Insured** as of the inception date of this policy;

4. flow-through process tanks, including oil/water separators; or

5. storage tank(s) situated in an underground area (such as a basement, cellar, mine shaft or tunnel) if the storage tank is situated upon or above the surface of the floor.

## SECTION 4: LIMITS OF LIABILITY AND SELF-INSURED RETENTION

**Limit of Liability**   **A.**   The Limits of Liability stated in Item 3. of the Declarations represent the maximum amount we will pay regardless of the number of **Insureds, Claims, Rectification Expense(s),** or **Emergency Remediation Expense(s)** incurred or individuals or entities making a **Claim(s)**. The payment of **Professional Loss, Rectification Expense, Protective Loss, Pollution Loss, Emergency Remediation Expense** and/or **Legal Expense** will reduce the Limit of Liability available to pay any **Claim(s)**.

**Limit of Liability – Each Claim**   **B.**   Our liability for the sum of all **Professional Loss, Rectification Expense Protective Loss, Pollution Loss, Rectification Expense, Emergency Remediation Expense** and/or **Legal Expense** for each single, covered **Claim** first made and reported to us in writing, during the **Policy Period** shall not exceed the amount stated in Item 3. of the Declarations for each **Claim**. This limit applies as excess over any applicable Self-Insured Retention Amount.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**Limit of Liability – Policy Aggregate**   **C.**    Our liability for the sum of all **Professional Loss, Rectification Expense, Protective Loss, Pollution Loss, Rectification Expense, Emergency Remediation Expense** and **Legal Expense** for all **Claims** first made and reported to us, in writing, during the **Policy Period** shall not exceed the amount stated in Item 3. of the Declarations as Aggregate. This limit applies as excess over any applicable Self-Insured Retention Amount.

The **Policy Period** Aggregate Limit of Liability as set forth above may not be combined or transferred, in whole or in part, so as to provide any additional Limit of Liability as respects any **Claim(s)** first made or deemed made during any other **Policy Period**. If the Limit of Liability as specified above for any **Policy Period** is exhausted, our obligation to that **Policy Period** shall be deemed completely fulfilled and extinguished.

**Multiple/Related Claims**   **D.**    The inclusion herein of more than one **Insured**, the making of a **Claim(s)** by more than one person or entity, or the inclusion of additional elements or amounts of **Professional Loss, Rectification Expense, Protective Loss, Pollution Loss, Emergency Remediation Expense** or **Legal Expense** shall not operate to increase our Limit of Liability. Unless otherwise specified, the Limit of Liability for each **Claim, Rectification Expense** or **Emergency Remediation Expense** as stated in Item 3. of the Declarations, is the most we will pay for the sum of all **Professional Loss, Rectification Expense, Protective Loss, Pollution Loss, Rectification Expense, Emergency Remediation Expense** and **Legal Expense** for all **Claims, Rectification Expense,** or **Emergency Remediation Expense** treated as a single **Claim, Rectification Expense,** or **Emergency Remediation Expense**.

**Self-Insured Retention Amounts**   **E.**   **1.**    Subject to the Limits of Liability set forth in Item 3. of the Declarations, we are liable only for that portion of **Professional Loss, Rectification Expense, Protective Loss, Pollution Loss,** or **Emergency Remediation Expense** under Section 1: What We Cover, of this policy in excess of the Self-Insured Retention Amount for each negligent act, error, or omission, or **Pollution Condition** if any, set forth in Item 3. of the Declarations for each such coverage.

    **2.**   **Legal Expense** applies to and reduces each applicable Self-Insured Retention Amount set forth in Item 3. of the Declarations.

    **3.**    With regards to **Protective Loss Coverage**, we are liable and obligated to indemnify the **Insured** upon full payment of the available **Design Professional's Insurance**. Should the **Design Professional's Insurance** not be available either through exhaustion of its limits or the applicability of a valid exclusion under the **Design Professional's Insurance** then our liability and obligation to indemnify the **Insured** shall attach excess of the Self-Insured Retention as set forth in Item 3. of the Declarations, whether fulfilled by the **Insured** or by proceeds from the **Design Professional's Insurance**.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

4. In the event of a **Claim** or payment of **Rectification Expense** for which coverage is provided under this policy, for which multiple coverage parts apply, only one Self-Insured Retention shall be applicable to each such **Claim** or payment of **Rectification Expense**. Furthermore, it is agreed that the Self-Insured Retention to be applied shall be the greater of those Self-Insured Retentions applied.

5. In the event that the **Insured** does not satisfy the Self-Insured Retention Amount, then you are responsible for the **Insured's** Self-Insured Retention obligation.

**Exhaustion of Applicable Limit of Liability**   F. Once an applicable Limit of Liability set forth in Item 3. of the Declarations has been exhausted, we have no obligation to: (i) defend or continue to defend any **Professional Liability Claim** or **Pollution Claim**; or (ii) pay any **Professional Loss**, **Rectification Expense**, **Protective Loss**, **Pollution Loss**, **Emergency Remediation Expense** or other amounts under this policy.

---

**SECTION 5: REPORTING, DEFENSE, SETTLEMENT AND COOPERATION**

---

*Duties of the Responsible Insured:*   A. As a condition precedent to the coverage hereunder:

1. The **Responsible Insured** must notify us of a **Claim** at the address set forth in the Declarations as soon as practicable.

2. The **Responsible Insured** must provide to us, whether orally or in writing, notice of the particulars the **Claim** including: (a) the date and details of all actual and alleged acts, errors or omissions in **Professional Activities and Duties** or **Pollution Conditions** resulting from **Contracting Activity** which took place, along with the specific nature, date and extent of any injury or damage which has been sustained; and (b) copies of any contracts that have been entered into by any **Insured** that are related to the **Professional Activities and Duties** or **Contracting Activities**; and (c) details explaining how the **Responsible Insured** first became aware of the **Claim**.

3. The **Insured** must cooperate with us and upon our request submit to examination under oath by a representative of us, if required, and attend hearings, depositions and trials and assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and otherwise cooperate in the investigation and/or defense of a **Claim**, all without charge to us. The **Insured** will further cooperate with us and do whatever is necessary to secure and affect any rights of indemnity, contribution, apportionment or subrogation which the **Insured** and/or we may have.

B. No costs, charges or expenses will be incurred, nor payments made, obligations assumed or remediation commenced or undertaken without our written consent which will not be unreasonably withheld.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

*Our right and duty to defend you:*  **C.**  We have the right and the duty to defend any **Claim** against the **Insured** seeking **Professional Loss** or **Pollution Loss** to which this insurance applies, including the right to select counsel, even if any of the allegations are groundless, false or fraudulent. However, we have no duty to defend any **Claim** against the **Insured** to which this insurance does not apply. If we exercise such right set forth above, the **Insured**, on our demand, will promptly reimburse us for any payments made by us within the Self-Insured Retention Amount.

**D.**  The **Insured** will not admit liability or settle any **Claim** without our prior written consent. If we recommend a monetary settlement of a **Claim**:

1. For an amount within the Self-Insured Retention Amount, and the **Insured** refuses to settle for such recommended amount, we will not be liable for any **Professional Loss** or **Pollution Loss** in excess of the Self-Insured Retention Amount; or

2. For a total amount in excess of the Self-Insured Retention Amount, and the **Insured** refuses to settle for such recommended amount, our liability for **Professional Loss** and **Pollution Loss** will be limited to such recommended amount plus the **Legal Expense** incurred as of the date we recommended such settlement amount which exceeds the Self-Insured Retention Amount, but falls within the Limit of Liability.

*You may report a circumstance to us:*  **E.**  If during the **Policy Period**, any **Responsible Insured** first becomes aware of an actual or alleged negligent act, error, or omission in **Professional Activities and Duties** or **Pollution Condition** for which any **Insured** reasonably believes may result in a **Claim** (thereafter referred to as a "Circumstance") for which this policy may apply, the **Responsible Insured** may provide written notice, of the actual or alleged act, error omission in **Professional Activities and Duties** or **Contracting Activities** to us during the **Policy Period**.

Any such Circumstance that subsequently becomes a **Claim** made against or by the **Insured** and reported to us, in writing, will be considered to have been first made and reported during the **Policy Period** and will be subject to all of the terms and conditions of this policy.

As a condition precedent to the rights afforded the **Insured** under this Subsection E., such written notice to us of a Circumstance shall contain all of the following information: (a) the date and details of all actual and alleged acts, errors or omissions in **Professional Activities and Duties** or **Contracting Activities** which took place, along with the specific nature, date and extent of any injury or damage which has been sustained; and (b) details explaining how the **Insured** first became aware of the Circumstance.

The **Insured** shall also provide us with copies of any contracts that have been entered into by any **Insured** that are related to the **Professional Activities and Duties** or **Contracting Activities**, upon our request.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| | |
|---|---|
| **SECTION 6: EXTENDED REPORTING PERIOD** | Section 6: Extended Reporting Period only applies to insurance afforded by this policy under Section 1: What We Cover, A. Professional Liability Coverage, C. Protective Loss Coverage and D. Pollution Loss Coverage. |

**A.** In the event of non-renewal or cancellation of this policy for any reason by you, or if we should cancel this policy or terminate it by refusing to renew, for reasons other than your non-payment of premium and/or Self-Insured Retention Amount and/or non-compliance with the terms and conditions of this policy, you:

*Automatic Extended Reporting Period:*

1. Shall be entitled to a ninety (90) day Automatic Extended Reporting Period at no additional premium. This extension shall apply to any **Claim(s)** first made against or by the **Insured** during the **Policy Period** and reported to us, in writing, during the ninety (90) days immediately following the effective date of cancellation or non-renewal.

*Optional Extended Reporting Period:*

2. May purchase an Optional Extended Reporting Period of up to three (3) years. The minimum premium for this Optional Extended Reporting Period will be one hundred percent (100%) of the expiring annual premium for a one (1) year period, one hundred fifty percent (150%) of the expiring annual premium for a two (2) year period, and two hundred percent (200%) of the expiring annual premium for a three (3) year period.

You must request the purchase of the Optional Extended Reporting Period in writing to us within thirty (30) days following the termination of this policy and pay the premium to us promptly when due.

If purchased, this extension shall apply to any **Claim(s)** first made against or by the **Insured** and reported to us, in writing, during the Optional Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims-made coverage for which **Retroactive Date** is the same as or earlier than the **Retroactive Date** shown in Item 3. of the Declarations, you shall have no right to an Optional Extended Reporting Period.

The Optional Extended Reporting Period shall be non-cancelable. Accordingly, at the commencement of the Optional Extended Reporting Period, the entire premium shall be considered fully earned.

**B.** The Limit of Liability applicable to the Automatic Extended Reporting Period and Optional Extended Reporting Period will be the Limit of Liability remaining under the terminated policy.

**C.** The Automatic Extended Reporting Period and Optional Extended Reporting Period will not apply to:

1. Any pending **Claim(s)** or proceedings;

2. Any paid **Claim(s)**; or

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

3. Any **Claim(s)** that is covered under any subsequent insurance purchased by the **Insured**, or that would otherwise be covered under any subsequent insurance purchased by the **Insured** but for a reduction or exhaustion of the Limits of Liability that would otherwise be applicable to such **Claim(s)**.

D. The extension of coverage granted hereunder shall be subject to all the terms and conditions of this policy and shall only apply to **Claims** arising out of the performance of **Professional Activities and Duties, Design Professional Services,** and **Contracting Activities** prior to the cancellation or non-renewal of this policy, and that are otherwise covered by this policy.

E. For purposes of Section 6: Extended Reporting Period, the quotation of different terms and conditions by us and the **Insured's** choice not to accept the quoted terms and conditions will not be construed as non-renewal of this policy.

## SECTION 7:  CONDITIONS

**Action Against Us**   A. No action will lie against us unless, as a condition precedent thereto:

1. The **Insured** has fully complied with all of the terms of this policy; and

2. The amount the **Insured** is obligated to pay has been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and us.

Any person or organization which has secured such judgment or entered into such written agreement will thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization will have any right under this policy to join us as a party to any action against the **Insured** to determine the **Insured's** liability, nor will we be brought into such action by the **Insured** or its legal representative.

**Assignment**   B. This policy cannot be assigned without our prior written consent, which will not be unreasonably withheld or delayed by us.

**Bankruptcy or Insolvency**   C. Bankruptcy or insolvency of the **Insured**, or of the **Insured's** estate, will not relieve us of any of our obligations under this policy.

**Cancellation**   D. The following with regards to cancellation apply to this policy:

1. Cancellation by You:  This policy may be canceled by you by mailing to us written notice stating when thereafter the cancellation will be effective. The mailing of such notice must be sent certified mail, return receipt requested or by electronic mail. The effective date and time of cancellation stated in the written notice will be the end of the **Policy Period**.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

The Minimum Earned Premium for this policy will be the percentage stated in Item 5. of the Declarations of the total premium for this policy. This means that such percentage of the total premium is fully earned by us on the inception date of this policy. You are not entitled to any return of the Minimum Earned Premium upon cancellation.

If the Minimum Earned Premium is less than one hundred percent (100%) of the total premium for this policy, and you cancel this policy, then the amount of premium returnable after the minimum premium earned is retained by us will be computed in accordance with the customary short-rate table and procedure.

2. <u>Cancellation by Us</u>:  This policy may be canceled by us by mailing to you at the address shown in Item 1. of the Declarations, written notice stating when not less than sixty (60) days thereafter [or ten (10) days for non-payment of premium] such cancellation will be effective.  The mailing of such notice will be sufficient proof of notice of cancellation. The effective date and time of cancellation stated in the written notice will be the end of the **Policy Period**.

   We may cancel this policy at any time, but only for the following reasons:

   a. any **Insured** has made a material misrepresentation which affects our assessment of the risks insured by this policy;

   b. any **Insured** breaches or fails to comply with policy terms, conditions, contractual duties or any of its obligations under this policy or at law; or

   c. any **Insured** fails to pay the premium or the Self-Insured Retention Amount.

   If we cancel this policy, then the amount of premium returnable to you is computed on a pro-rata basis and the Minimum Earned Premium will not apply.

   In the event of cancellation by us from any ground referred to in Subsection 2.b. above, you will have sixty (60) days from the date of notice of cancellation to remedy each breach and each failure that is a ground for cancellation, but only as to each and every breach and failure that are capable of being remedied. If your remedial efforts are completed within such sixty (60) day period and are satisfactory to us, we will rescind the Notice of Cancellation with a written confirmation to you.

3. The following provisions also apply to Subsections D.1. and D.2. above:

   a. the premium adjustment will occur as soon as practicable after cancellation becomes effective however; payment of unearned premium is not a condition of cancellation by us.

   b. if a **Claim** is made against or by any **Insured**, or coverage is otherwise requested from us by the **Insured** during the **Policy Period** or the Extended Reporting Period, then the premium will be considered one hundred percent (100%) earned, and the **Insured** is not entitled to any return of premium upon cancellation.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| Changes | E. | Notice to any agent or knowledge possessed by any agent or by any other person will not affect a waiver or a change in any part of this policy or estop us from asserting any right under the terms of this policy. The terms and conditions of this policy cannot be waived or changed, except by endorsement issued by us to form a part of this policy. |
|---|---|---|
| Choice of Law, Jurisdiction and Venue | F. | All matters arising hereunder including questions or disputes related to the validity, interpretation, performance and enforcement of this policy will be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules). It is agreed that in the event of our failure to pay any amount claimed to be due hereunder, we and you will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of our right to remove an action to a United States District Court. |
| Declarations and Representations | G. | By acceptance of this policy, you agree that the statements and information contained in the Application and other supplemental materials submitted to us are:  (a) true and correct; (b) such statements and information are material to our underwriting of this policy; and (c) that this policy has been issued by us in reliance upon the truth and correctness of such statements and information. |
| Design Professional's Insurance | H. | The **Insured** shall require that each **Design Professional** under written contract to it evidence professional liability insurance. |
| Headings | I. | The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of this policy. |
| Inspection and Audit | J. | We will be permitted, but not obligated, to examine, audit, monitor and inspect on a continuing basis any of the **Insured's** books, records, services, properties and activities at any time, as far as they relate to the subject matter of this policy. |
| | | Neither our right to examine, audit, monitor and make inspections, or the actual undertaking thereof, or any report thereon, neither constitutes an undertaking to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation. Any inspections will be coordinated through your broker or agent. |
| | | We may modify, amend or delete any of the terms and conditions of this policy including the right to charge additional premium and the right to cancel, rescind or void this policy, if our examination, audit, monitoring or inspection reveals any material risk, hazard or condition that was not previously disclosed by any **Insured** in the Application or supplemental materials, or which deviates from the information disclosed in the Application or supplemental materials. |
| Limitation of Liability | K. | Under Protective Loss Coverage, the **Insured** shall not accept any limitation of liability from a **Design Professional** other than to insurance proceeds, without our express written consent. |

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**Other Insurance  L.** Where other valid and collectible insurance is available to the **Insured**, in addition to **Design Professional's Insurance**, our obligations to the **Insured** are as follows:

1. This insurance is excess over any other valid and collectible insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

2. This insurance is excess over any other valid and collectible insurance available to the **Insured** under a project specific insurance policy, contractor-controlled insurance program, owner-controlled insurance program, consolidated (wrap-up) insurance program or any other similar insurance or program, whether such other insurance or program is stated to be primary, contributory, excess, contingent or otherwise.

3. This insurance is excess over any other valid and collectible **Design Professional's Insurance** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

4. Under Section 1: What We Cover: D. Pollution Loss Coverage only, when the **Named Insured** is required by contract, agreement, or permit to include any person or entity as an additional insured, such coverage shall be provided on a primary and non-contributory basis.

**Severability  M.** Except with respect to the Limits of Liability and the Self-Insured Retention Amount, and any rights or duties specifically assigned in this policy to you, this insurance applies: (a) as if each **Named Insured** were the only **Named Insured**; and (b) separately to each **Insured** against or by whom a **Claim** is made.

Misrepresentation, concealment, breach of condition or violation of any duty under this policy by one **Insured** shall not prejudice the interest or coverage of another **Insured** under this policy.

**Sole Agent  N.** You will act on behalf of all **Insured(s)** for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, giving and receiving notice of cancellation or non-renewal and the exercise of the rights provided in Section 6: Extended Reporting Period, B. Optional Extended Reporting Period.

**Subrogation  O.** In the event of any payment under this policy, we will be subrogated to all of the **Insured's** rights of recovery against any person or organization and the **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing at any time to prejudice our subrogation rights.

However, we waive our right(s) of recovery against any person or organization included in the definition of an **Insured** or against the **Insured's Clients**, if prior to a **Professional Liability Claim**, a waiver of subrogation was so required and accepted under a specific contractual undertaking by the **Insured**.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

Under Section 1: What We Cover: D. Pollution Loss Coverage, we waive our right(s) of recovery against any person or organization included in the definition of an **Insured** or against the **Insured's Clients** if prior to the **Pollution Claim**, a waiver of subrogation was required and accepted under a specific contractual undertaking by the **Insured**.

**Territory**   **P.**   Coverage granted under this policy will apply anywhere in the world, to the extent permitted by law.

© 2013 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**ENDORSEMENT #002**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

**SERVICE OF PROCESS**

The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates:

> Vivian Imperial
> c/o C T Corporation System
> 818 West 7th Street, Suite 930
> Los Angeles, CA  90017

as its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this Policy remain unchanged.

XL-CASOP 0118

© 2018 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

**ENDORSEMENT #003**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT - ADDITIONAL NAMED INSURED SCHEDULE**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that Definition **O.**, **Named Insured** of **SECTION 2: DEFINITIONS** is amended to include the following:

| Schedule | | |
|---|---|---|
| Company Name | Legal Entity | Address |
| Southland Industries | Corporation | 7390 Lincoln Way Garden Grove, CA |
| Southland Industries dba ABS Systems | DBA | 4749 West Post Road, Las Vegas, NV |
| Southland Industries of Virginia, Inc. | DBA | 7390 Lincoln Way Garden Grove, CA |
| Southland Industries dba Controltech | DBA | 4749 West Post Road, Las Vegas, NV |
| Envise | Corporation | 7390 Lincoln Way Garden Grove, CA |
| Temp-Control Mechanical Corporation dba TCM | Corporation | 4750-4800 N Channel Portland, OR |
| Temp Control Mechanical Corp dba: Swan Island Pipe Fab | DBA | 4750-4800 N Channel Portland, OR |
| Rolok Products | DBA | 4750-4800 N Channel Portland, OR |
| Connected Services Architecture and Engineering, PLLC | Limited Liability Company | 7390 Lincoln Way Garden Grove, CA |
| Trinity EMCS, Inc | Corporation | 77 Solano Square #193  Benicia, CA |
| Southland Engineering MI, LLC | Professional Service LLC. | 40600 Ann Arbor Rd E, Suite 201 Plymouth, MI 48170 |

All other terms, conditions and exclusions of this policy remain unchanged.

KLD 400 1214

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**ENDORSEMENT #004**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT - NAMED INSURED'S LOCATION SCHEDULE**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

This Policy is amended to include the following schedule:

| NAMED INSURED'S LOCATION SCHEDULE | |
|---|---|
| **Location Number** | **Location Address** |
| 1. | 1500 N Priest Dr, Suite 114 |
| | Tempe, AZ 85281 |
| 2. | 7421 Orangewood Avenue |
| | Garden Grove, CA 92841 |
| 3. | 12350-60 Edison Way |
| | Garden Grove, CA 92841 |
| 4. | 33225 Western Ave. |
| | Union City, CA 94587 |
| 5. | 33333 Western Ave |
| | Union City, CA 94587 |
| 6. | 7390 Lincoln Way |
| | Garden Grove, CA 92841 |
| 7. | 9530 Padgett Street, Suite 107 |
| | San Diego, CA 92126 |
| 8. | 379 & 395 Nelson St SW |
| | Atlanta, GA 30313 |
| 9. | 1506 Joh Ave, Suite 180 |
| | Baltimore, MD 21227 |
| 10. | 4765 Cameron St |
| | Las Vegas, NV 89103 |

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| 11. | 4749 W Post Road |
|-----|------------------|
|     | Las Vegas, NV 89118 |
|     | |
| 12. | 96 & 114 Megabyte Dr |
|     | McCarran, NV 89434 |
|     | |
| 13. | 4750-4800 N Channel Ave |
|     | Portland, OR 97217 |
|     | |
| 14. | 5018 N. Channel Ave |
|     | Portland, OR 97217 |
|     | |
| 15. | 22340 Dresden St., Ste 177 |
|     | Dulles, VA 20166 |
|     | |
| 16. | 8397 Terminal Road |
|     | Lorton, VA 22079 |
|     | |
| 17. | 7238 Fullerton Road |
|     | Springfield, VA 20166 |
|     | |
| 18. | 21670 Ridgetop Circle, Suite 100 |
|     | Sterling, VA 20166 |
|     | |
| 19. | 450 Quay St, Suite B |
|     | Kennewick, WA 99337 |
|     | |
| 20. | 1400 Montgomery St |
|     | South Hill, VA 23970 |
|     | |
| 21. | 560 First St, Suite B-201 |
|     | Benicia, CA 94510 |
|     | |
| 22. | 1341 N McDowell Blvd, Suite B |
|     | Petaluma, CA 94954 |
|     | |
| 23. | 2800 Dickerson Rd |
|     | Reno, NV 89503 |
|     | |
| 24. | 1191 Central Blvd, Suite D |
|     | Brentwood, CA 94513 |
|     | |
| 25. | 5001 N Lagoon Ave |
|     | Portland, OR 97217 |

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

| Location Number | Number of Tanks at Location | Tank Size(gallons) | Tank Contents | Tank Construction Material |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

All other terms, conditions and exclusions of this policy remain unchanged.

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**ENDORSEMENT #005**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

**MANUSCRIPT ENDORSEMENT - INCLUSION OF TECHNOLOGY SERVICES & ENVIRONMENTAL ACTIVITY**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that Definition **E. Contracting Activity(ies)** and **AA. Professional Activities and Duties** of **SECTION 2: DEFINITIONS,** are deleted in their entirety and replaced with the following:

| | | |
|---|---|---|
| **Contracting Activity(ies)** | **E.** | Means any general construction or environmental activity performed by or on behalf of the **Named Insured**. |
| | | **Contracting Activity(ies)** also includes **Technology Services** for a specific client in conjunction with your general construction activities. |
| **Professional Activities and Duties** | **AA.** | Means those activities whether part of, incidental to, or for which you have responsibility in your business as a construction contractor, construction manager, construction support services provider, including but not limited to developer, owner's representative, property manager, leasing agent, real estate broker/agent, architect, engineer, materials tester, geotechnical tester, surveyor, environmental contractor, environmental consultant, environmental support services provider, which are undertaken by or under the supervision of qualified persons or personnel. |
| | | **Professional Activities and Duties** also includes **Technology Services** for a specific client in conjunction with your business as a construction contractor, construction support services provider, environmental contractor, environmental consultant, environmental support services provider. |

In addition, the following definition will be added to **SECTION 2: DEFINITIONS:**

| | |
|---|---|
| **Technology Services** | means any of the following as part of your **Professional Activities and Duties** or your **Contracting Activity(ies):**<br>1.  Design and development of computer software programs, applications or systems;<br>2.  Database design or database management, data warehousing, data and application hosting;<br>3.  Website design or website programming;<br>4.  Creation, maintenance, use, modification, alteration and input into any digital model or digital representation, including for example, a Building Information Model (BIM) or other computer assisted design or drafting system or program;<br>5.  Maintenance of computer software programs, applications or systems design or developed by you;<br>6.  Hosting management or maintenance of websites designed or programmed by you; and |

© 2014 X.L. America, Inc.
All Rights Reserved. May not be copied without permission.

7.    Electronic data transmission in conjunction with any of the above.

All other terms, conditions and exclusions of this policy remain unchanged.

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**ENDORSEMENT #006**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT – LEGAL EXPENSE IN ADDITION TO THE LIMITS OF LIABILITY – COVERAGE A – PROFESSIONAL LIABILITY AND COVERAGE D.1 POLLUTION LOSS COVERAGE**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that the following amendments will be made to this policy:

It is hereby understood and agreed that solely with respect to Insuring Agreement A and D.1. of **SECTION 1: WHAT WE COVER, SECTION 4: LIMITS OF LIABILITY AND SELF-INSURED RETENTION** is amended by the addition of the following:

**Legal Expense** within the applicable Self-Insured Retention Amount set forth in Item 3. Of the Declarations will be borne by the **Insured** and uninsured by the Company.

**Legal Expense** incurred in connection with Coverage A. and D.1. will not reduce the Limits of Liability set forth in Item 3., A or D.1. of the Declarations, except as set forth below.

The Company's liability for **Legal Expense** ends when the Company has either:

1.  exhausted the Aggregate Limit of Liability set forth in Item 3. A or D.1. of the Declarations by payment of **Professional Loss** or **Pollution Loss**; or

2.  paid **Legal Expense** equal to $2,000,000 or by payment of **Professional Loss** or **Pollution Loss**, whichever occurs first. Thereafter, **Legal Expense** will apply to and reduce the Limit of Liability set forth in Item 3. A or D.1. of the Declarations.

All other terms, conditions and exclusions of this Policy remain unchanged.

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**ENDORSEMENT #007**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT - AMENDMENT TO CONDITIONS – CHOICE OF LAW, JURISDICTION AND VENUE**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that Condition F., Choice of Law, Jurisdiction and Venue of **SECTION 7: CONDITIONS** is deleted in its entirety.


All other terms, conditions and exclusions of this policy remain unchanged.

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission

**ENDORSEMENT #008**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT - DISASTER RESPONSE EXPENSE**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that **SECTION 1: WHAT WE COVER**, is amended by the addition of the following:

**F.    DISASTER RESPONSE EXPENSE**

1.  We will pay on behalf of the **Insured** for **Disaster Response Expense** resulting from any **Pollution Condition** on, at, under or migrating from a **Job Site** resulting from **Contracting Activity(ies)**, that has resulted in or is likely to result in a:

    a)  **Pollution Loss** covered under this Policy;
    b)  a **Media Event**; and
    c)  need for a **Disaster Response Advisor**;

    provided such **Pollution Condition** commences during the **Policy Period** and is reported by the **Insured** to us, in writing, during the **Policy Period** or, where applicable, the Extended Reporting Period.

2.  Solely with respect to the coverage provided by this endorsement, the following Limit of Liability and Self Insured Retention will apply:

    **DISASTER RESPONSE EXPENSE:**

    | | |
    |---|---|
    | $500,000 | **Disaster Response Expense** Limit of Liability for each **Pollution Condition** |
    | $500,000 | **Disaster Response Expense** Aggregate Limit of Liability |
    | $ 50,000 | **Disaster Response Expense** Self Insured Retention |

    The Limit of Liability referenced above are not dedicated limits and will be reduced by all payment(s) for **Pollution Loss** made under this Policy.

    Nothing contained in this endorsement shall operate to reinstate any Limit of Liability set forth in this Policy.

    Notwithstanding anything to the contrary in this endorsement, in no event will we be liable for any amounts that exceed the applicable Limits of Liability set forth above in Item 3. of the Declarations or under the rules described in **SECTION 4: LIMITS OF LIABILITY AND SELF-INSURED RETENTION.**

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

3.   **SECTION 2: DEFINITIONS**, is amended by the addition of the following:

**DISASTER RESPONSE ADVISOR**   means any public relations firm or crisis management firm hired by the **Insured** with our prior written consent, which consent shall not be unreasonably  withheld, to minimize potential harm to the **Insured** by maintaining and/or restoring public confidence in the **Insured.**

**DISASTER RESPONSE EXPENSE**   means any reasonable and necessary expenses incurred by the **Insured** or the **Disaster Response Advisor** and with our prior written consent. These expenses include, but are not limited to the following:

1.     medical expenses;
2.     funeral expenses;
3.     psychological counseling expenses;
4.     travel expenses;
5.     temporary living expenses;
6.     printing and mailing expenses;
7.     expenses to secure the scene in the event of a disaster; and/or
8.     any other costs pre-approved by the Company.

**MEDIA EVENT**   means a spontaneous happening that produces coverage by any mass media organization, particularly television news and newspapers in both print and Internet editions.

All other terms, conditions and exclusions of this policy remain unchanged.

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission

**ENDORSEMENT #009**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT – SUPPLEMENTAL COVERAGES**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that the following coverages will apply:

**Litigation Attendance Reimbursement**

Subject to the Litigation Attendance Limit of Liability set forth below, upon written request by the **Insured** , we shall reimburse the **Insured's** actual loss of earnings and reasonable expenses incurred when any **Insured** attends a hearing, deposition, or trial at our request, in the course of defending a **Claim** seeking sums payable under Insuring Agreement A. Professional Liability Coverage of this Policy.

$  **10,000**            Per Day Each **Claim**

$  **10,000**            Aggregate Limit of Liability

**Disciplinary Proceedings Defense Expense**

Subject to the Disciplinary Proceedings Limit of Liability set forth below, upon written request by the **Insured** during the **Policy Period**, within 90 days after either the end of the **Policy Period** or within the Optional Extended Reporting Period, if applicable, we shall retain counsel for the **Insured** and pay such counsel's reasonable and necessary fees and expenses in defense of a disciplinary proceeding first brought against the **Insured** during the **Policy Period,** and arising out of either an actual or alleged negligent, act, error or omission in the rendering of **Professional Activities and Duties** or **Contracting Activity,** performed by or on behalf of the **Insured** on or after the **Retroactive Date** and before the end of the **Policy Period.**

$  **10,000**            Each **Claim** Limit of Liability

$  **10,000**            Aggregate Limit of Liability

**Subpoena Defense Expense**

Subject to the Subpoena Defense Limit of Liability set forth below, upon written request by the **Insured** during the **Policy Period**, within 90 days after either the end of the **Policy Period** or within the Optional Extended Reporting Period, if applicable, we shall retain counsel for the **Insured** and pay such counsel's reasonable and necessary fees and expenses in defense of the **Insured** regarding the production of documents and the preparation for and giving of testimony, in response to a subpoena first served on the **Insured** during the **Policy Period** and arising from **Professional Activities and Duties** or **Contracting Activity,** performed by or on behalf of the **Insured** on or

KLD 400 1214                    © 2014 X.L. America, Inc.                    Page 1 of 3
All Rights Reserved.  May not be copied without permission.

after the **Retroactive Date** and before the end of the **Policy Period.**

$ __10,000_____ Each **Claim** Limit of Liability

$ __10,000_____ Aggregate Limit of Liability

**ADA and FHA Defense Expense**

Subject to the ADA and FHA Expense Limit of Liability set forth below, upon written request by the **Named Insured** during the **Policy Period**, within 90 days after either the end of the **Policy Period** or within the Optional Extended Reporting Period, if applicable, we shall retain counsel for the **Insured** and pay such counsel's reasonable and necessary fees and expenses incurred when the **Insured** responds to regulatory or administrative actions first brought against the **Insured** during the **Policy Period** by a government agency under the Americans with Disabilities Act of 1990 (ADA) or the Fair Housing Act (FHA), and alleging a negligent, act, error or omission in the rendering of **Professional Activities and Duties** or **Contracting Activity,** by or on behalf of the **Insured,** on or after the **Retroactive Date** and before the end of the **Policy Period.**

$ __10,000_____ Each **Claim** Limit of Liability

$ __10,000_____ Aggregate Limit of Liability

**Corporate Reputation Rehabilitation**

Subject to the Corporate Reputation Rehabilitation Limit of Liability set forth below, upon written request by the **Insured** during the **Policy Period**, within 90 days after either the end of the **Policy Period** or within the Optional Extended Reporting Period, if applicable, the **Insurer** shall pay on behalf of the **Named Insured** the reasonable and necessary fees and expenses subsequently incurred by a public relations firm approved by the **Insurer** to restore an **Insured's** corporate reputation that is damaged as a result of a **Claim** seeking sums payable under Insuring Agreement A. Professional Liability Coverage of this Policy.  The **Insurer** has the right to require for approval of the public relations firm minimum professional certifications and qualifications (e.g., Examination for Accreditation in Public Relations, or Accredited Business Communicator from International Association of Business Communicators).

$ __10,000_____ Each **Claim** Limit of Liability

$ __10,000_____ Aggregate Limit of Liability

**Bankruptcy of Design Professional**

Subject to the Bankruptcy of **Design Professional** Limit of Liability set forth below, upon written request by the **Named Insured** during the **Policy Period**, within 90 days after either the end of the **Policy Period** or within the Optional Extended Reporting Period, if applicable, we shall reimburse the **Insured** for the reasonable and necessary fees and expenses of bankruptcy counsel in making a **Protective Claim** seeking sums payable under Insuring Agreement C. Protective Loss Coverage under this Policy against a **Design Professional** who has filed for or been put into bankruptcy under the United States Bankruptcy Code, provided that the **Protective Claim,** at least in part, is allowed as against or results in a judgment against the **Design Professional** in favor of the **Insured,** which is final and no longer subject to objection or appeal.

$ __10,000_____ Each **Claim** Limit of Liability

$ __10,000_____ Aggregate Limit of Liability

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

**Building Information Modeling - Extra Expense**

Subject to the Building Information Modeling Limit of Liability set forth below, upon written request by the **Insured** during the **Policy Period**, within 90 days after either the end of the **Policy Period** or within the Optional Extended Reporting Period, we shall reimburse the **Insured** for any and all reasonable and necessary additional expense arising from loss of or damage to any information due to inherent malfunction of any software used in connection with any Building Information Modeling system, including but not limited to erroneous calculations or modeling, provided that the malfunction is first discovered during the **Policy Period** and after the system has been put to its intended use in the course of actual construction.

$     __25,000_____     Each **Claim** Limit of Liability

$     __25,000_____     Aggregate Limit of Liability

All other terms, conditions and exclusions of this Policy remain unchanged.

**ENDORSEMENT #010**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT – INDEMNITY AGREEMENT FOR EVIDENCING A REDUCED SELF-INSURED RETENTION AMOUNT ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**
**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that **SECTION 4: LIMITS OF LIABILITY AND SELF-INSURED RETENTION** is amended by the addition of the following:

Solely with respect to a **Claim** that is made against the **Insured** by any person or organization to whom a Certificate of Insurance has been issued and which:

1.      references this Policy, and

2.      specifies a Self-Insured Retention Amount less than the Self-Insured Retention Amount for the applicable coverage(s) stated in Item (3) of the Declarations,

the Self-Insured Retention Amount applicable to such **Claim** shall be the lesser amount shown in the Certificate of Insurance, provided that:

      a.      the **Insured** agrees to promptly reimburse the Company for the amount of the difference between the Self-Insured Retention Amount shown in the Certificate of Insurance and the Self-Insured Retention Amount for the applicable coverage(s) stated in Item (3) of the Declarations; and

      b.      the **Insured** agrees to indemnify the Company for any loss, costs, expenses and/or attorney's fees incurred by the Company in enforcing its rights under this endorsement.

All other terms, conditions and exclusions of this Policy remain unchanged.

**ENDORSEMENT #011**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT - RETROACTIVE DATES FOR SPECIFIC ENTITIES**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged it is hereby understood and agreed that the following **Retroactive Date(s)** apply to coverage afforded under **SECTION 1: WHAT WE COVER.**

As respects Supplemental Coverage I., Green Building Design / LEED:  12/18/2010


As respects ABS Systems and Southland Industries DBA ABS System:
Coverage C-Protective Errors and Omissions: 08/14/2013
Coverage A-Professional Liability: 08/14/2013
Coverage D-Contractor's Pollution Liability: 08/14/2013

As respects Envise:

Coverage C-Protective Errors and Omissions: 5/1/2015
Coverage A-Professional Liability: 5/1/2015
Coverage D-Contractor's Pollution Liability: 5/1/2015

As respects Temp Control Mechanical Corporation dba TCM:

Retro dates for TCM only will be 10/1/2000 for the First $2M of the $15M Southland policy limit.  The full limit of the $15M  limit retro date will be 10.1 2016.


All other terms, conditions and exclusions of this Policy remain unchanged.

© 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission

**ENDORSEMENT #012**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**MANUSCRIPT ENDORSEMENT - AMENDMENT TO RELATED ENTITIES AND INDIVIDUALS EXCLUSION**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that Exclusion **L.** of **SECTION 3: WHAT WE DO NOT COVER** is deleted in its entirety and replaced with the following:

**L.** *Related Entities and Individuals:* arising from a **Claim** by an entity or individual:

    1.    that wholly or partially owns, operates, or manages an **Insured**;

    2.    in which an **Insured** has a direct or indirect ownership interest of twenty five percent (25%) or more;

    3.    that is controlled, operated, or managed by an **Insured**; or

    4.    that is an affiliate of an **Insured**.

All other terms, conditions and exclusions of this policy remain unchanged.

 © 2014 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission

**ENDORSEMENT #013**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### MANUSCRIPT ENDORSEMENT - THE REGENTS OF THE UNIVERSITY OF CALIFORNIA CLAIMS

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution (Claims-Made)**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that **SECTION 3: WHAT WE DO NOT COVER**, is amended to include the following

We will not make any payment for a Claim, Rectification Expense, Protective Loss, and/or Emergency Remediation Expense directly or indirectly due to:

> Professional Activities and Duties, Contracting Activities, and/or Completed Operations performed by or on behalf of Southland Industries for the design, construction, construction management, supervision, and/or oversight – of any and all mechanical systems including but not limited to plumbing, HVAC, and electrical located under the first floor building slab of the University of California at San Francisco Cardiovascular Research Building located at 555 Mission Bay Boulevard South, San Francisco, California 94158.

All other terms, conditions and exclusions of this policy remain unchanged.

**ENDORSEMENT #014**

This endorsement, effective 12:01 a.m., December 18, 2018, forms a part of Policy No. CEO744654902 issued to SOUTHLAND INDUSTRIES by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**AMENDMENT TO HOSTILE ACTS EXCLUSION**

This endorsement modifies insurance provided under the following:

**PA/CE Plus: Professional Activities/Complete Execution + Pollution**

**PROFESSIONAL & POLLUTION LIABILITY FOR CONSTRUCTION CONTRACTORS AND CONSTRUCTION SUPPORT SERVICES PROVIDERS**

In consideration of the premium charged, it is hereby understood and agreed that Exclusion **I.** under **SECTION 3: WHAT WE DO NOT COVER** is deleted in its entirety and replaced with the following:

I.    *Hostile Acts:* arising from any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, or military or usurped power, strike, riot, or civil commotion or terrorism, including any act which is certified by the United States Secretary of the Treasury in consultation with the Secretary of Homeland Security, and the Attorney General of the United States as an "act of terrorism" as defined by the Terrorism Risk Insurance Act of 2002 or any amendment thereto.

All other terms, conditions and exclusions of this policy remain unchanged.

© 2015 X.L. America, Inc.
All Rights Reserved.  May not be copied without permission.

IN THE CIRCUIT COURT FOR Baltimore City
(City/County)

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

    *Defendant:* You must file an Information Report as required by Rule 2-323(h).

**THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING**

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT     CASE NUMBER _____
(Clerk to insert)

**CASE NAME:** Southland Industries     vs.     Indian Harbor Insurance Company, et al.
Plaintiff                            Defendant

**PARTY'S NAME:** Southland Industries     PHONE: 714-901-5800

**PARTY'S ADDRESS:** 12131 Western Avenue, Garden Grove, CA 92841

**PARTY'S E-MAIL:** (contact through counsel) laura.freidstudlo@pillsburylaw.com

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:**   Laura A. Freid-Studlo     PHONE: 202-663-9391

**PARTY'S ATTORNEY'S ADDRESS:** 1200 Seventeenth St., NW, Washington, DC 20036

**PARTY'S ATTORNEY'S E-MAIL:**   laura.freidstudlo@pillsburylaw.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☒ Yes ☐ No   If yes, Case #(s), if known: 24-c-18-007030

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours   5   days

### PLEADING TYPE

**New Case:** ☒ Original    ☐ Administrative Appeal    ☐ Appeal
**Existing Case:** ☐ Post-Judgment    ☐ Amendment
*If filing in an existing case, skip Case Category/ Subcategory section – go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt:
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☒ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
   ☐ Commercial
   ☐ Residential
   ☐ Currency or Vehicle
   ☐ Deed of Trust
   ☐ Land Installments
   ☐ Lien
   ☐ Mortgage
   ☐ Right of Redemption
   ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm - Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) |
|---|

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☒ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☐ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☒ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☒ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Punitive | ☒ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.     ☐ Liability is not conceded, but is not seriously in dispute.     ☒ Liability is seriously in dispute.

| MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs) |
|---|

☐ Under $10,000          ☐ $10,000 - $30,000          ☐ $30,000 - $100,000          ☒ Over $100,000

☐ Medical Bills $ _____     ☐ Wage Loss $ _____     ☐ Property Damages $ _____

| ALTERNATIVE DISPUTE RESOLUTION INFORMATION |
|---|

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| | | |
|---|---|---|
| A. Mediation | ☒ Yes ☐ No | C. Settlement Conference | ☒ Yes ☐ No |
| B. Arbitration | ☐ Yes ☒ No | D. Neutral Evaluation | ☐ Yes ☒ No |

| SPECIAL REQUIREMENTS |
|---|

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

| ESTIMATED LENGTH OF TRIAL |
|---|

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*

***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less          ☐ 3 days of trial time

☐ 1 day of trial time          ☐ More than 3 days of trial time

☐ 2 days of trial time

| BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM |
|---|

***For all jurisdictions,** if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of          ☐ **Standard** - Trial within 18 months of

Defendant's response          Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response

☐ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☒ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

February 10, 2023
_____
Date

1200 Seventeenth Street, NW
_____
Address

Washington          DC          20036
_____
City          State          Zip Code

CPF0512140121
_____
Signature of Attorney / Party          Attorney Number

Laura A. Freid-Studlo
_____
Printed Name

**CC-DCM-002** (Rev. 12/2022)          Page 3 of 3

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

SOUTHLAND INDUSTRIES )
12131 Western Avenue )
Garden Grove, CA 92841 )
)
     Plaintiff, )
)
vs. )
)
INDIAN HARBOR INSURANCE COMPANY )   Civil Action No. _____
70 Seaview Avenue, Ste 1 )
Stamford, CT 06902 )   **NOTICE OF APPEARANCE**
)   **JURY TRIAL DEMANDED**
     Serve on Registered Agent: )
     The Corporation Trust, Incorporated )
     2405 York Road, Suite 201 )
     Lutherville Timonium, MD 21093 )
)
and )
)
OLD REPUBLIC INSURANCE )
COMPANY )
631 Excel Drive, Suite 200 )
Mt. Pleasant, PA 15666 )
)
     Serve on: )
     Maryland Insurance Administration )
     200 St. Paul Place, Suite 2700 )
     Baltimore, MD  21202 )
)
and )
)
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, )
PENNSYLVANIA )
1271 Avenue of the Americas, Floor 37 )
New York, NY 10020 )
)
     Serve on: )
     Maryland Insurance Administration )
     200 St. Paul Place, Suite 2700 )
     Baltimore, MD  21202 )
)
     Defendants. )
     _____ )

## NOTICE OF APPEARANCE OF COUNSEL

Please enter the appearance of the undersigned counsel for Plaintiff Southland Industries.

## MARYLAND RULE 1-313 CERTIFICATION

I, Laura A. Freid-Studlo, hereby state that I am duly admitted to practice law in the State of Maryland.

Laura A. Freid-Studlo (CPF# 0512140121)

Dated:  February 10, 2023                Respectfully submitted,

Laura A. Freid-Studlo (CPF# 0512140121)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, DC 20036
Phone:  (202) 663-9391
Fax:  (202) 663-8007
laura.freidstudlo@pillsburylaw.com

*Counsel for Plaintiff Southland Industries*

2

**IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND**

SOUTHLAND INDUSTRIES )
12131 Western Avenue )
Garden Grove, CA 92841 )
)
      Plaintiff, )
)
vs. )
)
INDIAN HARBOR INSURANCE COMPANY )   Civil Action No. _____
70 Seaview Avenue, Ste 1 )
Stamford, CT 06902 )
)   **JURY TRIAL DEMANDED**
      Serve on Registered Agent: )
      The Corporation Trust, Incorporated )
      2405 York Road, Suite 201 )
      Lutherville Timonium, MD 21093 )
)
and )
)
OLD REPUBLIC INSURANCE )
COMPANY )
631 Excel Drive, Suite 200 )
Mt. Pleasant, PA 15666 )
)
      Serve on: )
      Maryland Insurance Administration )
      200 St. Paul Place, Suite 2700 )
      Baltimore, MD  21202 )
)
and )
)
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, )
PENNSYLVANIA )
1271 Avenue of the Americas, Floor 37 )
New York, NY 10020 )
)
      Serve on: )
      Maryland Insurance Administration )
      200 St. Paul Place, Suite 2700 )
      Baltimore, MD  21202 )
)
      Defendants. )
)

## REQUEST FOR WRIT OF SUMMONS

The undersigned counsel hereby requests that the Clerk issue a Writ of Summons for service on the following three (3) Defendants at the above addresses: **Indian Harbor Insurance Company**; **Old Republic Insurance Company**; and **National Union Fire Insurance Company of Pittsburgh, Pennsylvania** (collectively, "Defendants"). Plaintiff presently intends to serve Defendants by private process server. Please contact the undersigned if you require any additional information.

Dated:  February 10, 2023

Respectfully submitted,

Laura A. Freid-Studlo (CPF# 0512140121)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, DC 20036
Phone:  (202) 663-9391
Fax:  (202) 663-8007
laura.freidstudlo@pillsburylaw.com

*Counsel for Plaintiff Southland Industries*

2